DANIEL J. KOPEC, PLAINTIFF-APPELLANT, v. THEODORE
S. KAKOWSKI, DEFENDANT-RESPONDENT.

Argued January 10, 1961—Decided February 20, 1961.

244

 

*Mr. Sidney P. McCord, Jr.* argued the cause for plaintiff-appellant (*Mr. Thomas F. McGuire,* attorney, and on the brief).

*Mr. Peter J. Devine, Jr.* argued the cause for defendant-respondent (*Messrs. Kisselman, Devine, Deighan & Montano,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. At the close of all evidence defendant moved for judgment upon the ground that plaintiff was guilty of contributory negligence as a matter of law. The court reserved decision and submitted the case to the jury, which returned a verdict for plaintiff in the sum of $10,000. Some days thereafter the court granted defendant's motion. *R. R.* 4:51–2. On appeal, the judgment was affirmed by the Appellate Division and we granted certification, 33 *N. J.* 388 (1960).

██ At the outset we must recognize that a motion for judgment made at the close of the trial should be granted where "the judge, by the application of the reasoning processes of the mind to the evidence adduced in the case, may properly conclude that fair-minded men cannot honestly differ as to the conclusions to be drawn from the proofs." *Franklin Discount Co. v. Ford,* 27 *N. J.* 473, 487 (1958). The trial court, in considering such a motion, cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Melone v. Jersey*

*Central Power and Light Co.,* 18 *N. J.* 163, 170 (1955). We shall proceed to assay the proofs, guided by these cardinal principles.

On September 6, 1957 plaintiff, as on a number of occasions theretofore, was in the Silver Moon Diner located on the easterly side of Route 130 approximately midway between Woodland and Marlton Avenues, Pennsauken. The weather was clear, warm and dry. At 10:30 that evening he left the diner bound for the Marlton Pike, which is situated to the northwest of the intersection of Woodland Avenue and Route 130. Woodland Avenue terminates at the westerly line of Route 130, forming a "T" intersection. In this general vicinity Route 130 is a four-lane highway with a medial strip separating the north and south bound lanes. For some distance north of the Woodland Avenue intersection, however, the south bound shoulder is paved, thus constituting, in effect, a three-lane highway. This latter lane bears right to an overpass located some distance south of the Woodland Avenue intersection for access to Admiral Wilson Boulevard. The south bound lane adjacent to the medial strip is 13 feet wide; the next lane is 10 feet wide, and the paved shoulder is approximately 12 feet wide. The section is well lighted with overhead lights on either side of Route 130, spaced at intervals of approximately 135 feet. At the junction of Woodland Avenue and Route 130 there are no marked crosswalks. This portion of the highway is a 45 mile per hour zone.

Plaintiff proceeded, as was his prior custom, southwardly upon a concrete sidewalk and dirt pathway on the easterly side of Route 130 until he arrived at a point directly across from Woodland Avenue, where he stopped, waiting for north bound traffic to clear. Having traversed the north bound lane he stood on the medial divider for a period of time estimated by him as between some seconds and "a few minutes," observing the south bound traffic to his right. As he was stepping off the strip he saw two cars proceeding in tandem southwardly in the lane adjoining the divider strip. Plain-

tiff testified that immediately prior to his attempted crossing of the southerly lanes he estimated that these two cars were approximately 30 to 40 yards away, traveling at a speed of between 50 and 55 miles per hour. However, a photographic exhibit upon which plaintiff marked the locations of the cars and himself at the time of making this observation demonstrates the distance to be approximately 100 yards. He proceeded to cross the southerly lanes at a pace faster than his normal walking gait, looking forward and to the right. He succeeded in safely negotiating the lane closest to the divider strip, the next succeeding lane to the west, a total of some 23 feet, and some 2 to 7 feet of the paved shoulder, when he saw defendant, who was operating the rear-most of the two cars, suddenly veer to the right onto the paved shoulder, passing the lead car on that side. Plaintiff attempted to jump from this lane to the curb but was struck with the right front fender of defendant's car. Defendant brought his car to a stop some 60 yards beyond the point at which plaintiff's body was found.

Plaintiff suffered a severance of the urethra; a comminuted fracture of the hip; a broken right leg, close to the ankle, which has resulted in a shortening of his leg. He had severe headaches and scars over his eyes, nose and forehead. The headaches have occasionally recurred. He was in a hospital for about seven weeks and remained in bed for about three weeks after returning to his home from the hospital. He thereafter used crutches for some two or three months and a cane for some three weeks. His leg and abdomen still pain him on occasion. His doctor bills amounted to $1,700 and his loss of wages to $6,500.

We cannot say as a matter of law that plaintiff was guilty of contributory negligence. In resolving the question of plaintiff's contributory negligence as a matter of law we must consider the factual setting as revealed by the testimony, including (1) his familiarity with the highway; (2) the observations made by him before venturing across the south bound lane and during his crossing thereof;

(3) the distance, at the time of his entrance upon the highway, between that point and defendant's car; (4) the fact that defendant was operating the rear-most of two cars traveling in tandem in the lane immediately adjacent to the medial strip; (5) the speed at which the cars were estimated to be traveling in a 45 mile per hour zone; (6) the distance of the highway traversed by plaintiff before the impact; (7) the sudden veering of defendant to the right across the second lane into the third lane, with the added acceleration of speed necessary to pass the lead car on the right. Fairminded men of ordinary prudence might well differ under the proofs adduced as to whether plaintiff acted as an ordinarily prudent man would act. It follows that the issue of contributory negligence was not one of law for determination by the court but rather one of fact for determination by the jury.

However, the conclusion that the granting of defendant's motion for an involuntary judgment was improper does not eventuate in a reversal and reinstatement of the entire verdict. It is to be noted that the trial was sharply contested. The factual setting which had to be evaluated by the jury in arriving at the solution of questions of negligence and contributory negligence was such as presented no crystal clear problem for simple decision. Additionally, it must be remembered that after deliberating for five and one-half hours the jury informed the court that it was hopelessly deadlocked. One-half hour after the court instructed the jury to resume its deliberations it returned with a ten to two verdict in favor of plaintiff for the sum of $10,000. The smallness of this verdict in the light of plaintiff's proven injuries and special damages of $8,200 leads to the reasonable inference that the verdict was the result of a reduction in the amount of damages because of the doubt of the jury as to the fundamental issues of liability arising from defendant's alleged negligence and plaintiff's alleged contributory negligence. The trial judge, in his oral conclusions granting the motion from which appeal was

here taken, stated that he felt the damages awarded were inadequate and that the inadequacy of the damages, viewed in the entire setting, indicated a compromise verdict. The inadequacy of the verdict gives rise to the conclusion that the verdict was the result of a compromise and not of the conscientious judgment of the jury, hence it taints the entire verdict.

Although plaintiff solely sought a reversal of the involuntary judgment, we conceive that the interests of justice will be best served by a new trial on all issues. *Hendrikson v. Koppers Co., Inc.,* 11 *N. J.* 600 (1953); *Kress v. City of Newark,* 8 *N. J.* 562 (1952); *Justice v. Weise,* 14 *N. J. Super.* 9 (*App. Div.* 1951).

Accordingly, the judgment is reversed and the matter remanded for a trial *de novo* on all issues.

PROCTOR, J. (dissenting). I must dissent, for it seems to me that if ever there was a pedestrian-automobile accident case where there was contributory negligence as a matter of law, this is it. Viewed in the light most favorable to the plaintiff, the evidence discloses that while he was standing on the medial divider he observed two cars—one behind the other—one hundred yards away (the plaintiff testified the cars were thirty to forty yards away) traveling on the lane adjacent to the divider at a speed of between fifty to fifty-five miles per hour. Plaintiff was a licensed driver. He must therefore have realized that the cars would arrive where he was attempting to cross in about four seconds. It would take a man walking hurriedly more than that time to travel the thirty-five feet which plaintiff had to go. Additionally, plaintiff was well acquainted with the neighborhood. At the point where he intended to cross there was a well traveled ramp leading to an overpass south of the Woodland Avenue intersection. Drivers intending to take this ramp necessarily had to travel on the westerly of the southbound lanes. On these facts it seems to me that when the plaintiff stepped off the medial divider he should have reasonably

anticipated that one or both of these cars might turn onto the outside lane in order to use the ramp. In spite of his knowledge of the area and his awareness of the approaching vehicles, plaintiff voluntarily stepped in the path of defendant's car. If he had remained on the medial strip for a matter of seconds, both vehicles would have passed and by his own testimony the plaintiff could have then crossed with safety. In my opinion, reasonable minds cannot fairly deny that any man who attempted to cross a major highway under such circumstances was not acting as a reasonably prudent person and contributed to the cause of his own injury.

On the above facts I would find that the plaintiff was guilty of contributory negligence as a matter of law and would therefore affirm the judgment of the Appellate Division. I am authorized to say that Mr. Justice HALL joins in this dissent.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, SCHETTINO and HANEMAN—5.

*For affirmance*—Justices PROCTOR and HALL—2.