98 N.J. Super. 138 (1967)
236 A.2d 394
JULES J. FALCONE, PLAINTIFF-APPELLANT,
v.
NEW JERSEY BELL TELEPHONE COMPANY, A NEW JERSEY CORPORATION, AND RICHARD KEPPLER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1967.
Decided November 28, 1967.
*142 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Augustus S. Goetz for appellant (Mr. John W. Gilbert, of counsel).
Mr. W. Reading Gebhardt for respondents (Messrs. Gebhardt & Kiefer, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff appeals from a judgment of $5,000 in his favor following a jury verdict in that amount.
Plaintiff sued for personal injuries sustained on October 14, 1958 when his vehicle was struck in the rear by one owned by defendant New Jersey Bell Telephone Company and driven by its employee Keppler. Both cars had been proceeding north on South Main Street, Phillipsburg. Plaintiff *143 testified that when he reduced speed because the car ahead of him did so preparatory to making a left turn, he was struck in the rear by defendants' panel truck. Keppler's version was that plaintiff had been following closely behind the car ahead and stopped suddenly when the car ahead did so; thus he was unable to avoid striking him. There was a sharp dispute as to the severity of the crash, plaintiff testifying that the impact had driven him ahead some 30 to 35 feet and into the curb, while Keppler stated that the distance was only two to three feet.
At the trial, which began on September 26, 1966 and lasted eight days, plaintiff acted as his own attorney. His previous counsel had withdrawn on May 21, 1966. On June 15 the case was continued (peremptorily) until September 26, 1966 in order to permit plaintiff to obtain new counsel. He appeared on the trial date without counsel.
By its verdict the jury found "the defendant guilty of negligence" and awarded plaintiff the sum of $5,000. The present appeal followed. Defendants did not cross-appeal.
Plaintiff first contends that it was error to compel him to proceed to trial without counsel. We disagree. Plaintiff had been notified of the trial date three months in advance. The case was eight years old. Two of his treating doctors had already died, another was no longer available as a witness, and one of defendants' examining doctors had allegedly become so ill as to be unable to appear in court. Although plaintiff made a motion that the judge disqualify himself, no motion to continue the case was ever made. This apparently led the trial judge to conclude that plaintiff had elected to try his own case and he proceeded to warn plaintiff of the inadvisability of so doing. When plaintiff protested that he had not had sufficient time to secure counsel, the argument ended with the following colloquy:
"The Court: You had from June 15th which I consider sufficient time to get an attorney.
Mr. Falcone: I accept that.
The Court: We will start in five minutes."
*144 Plaintiff next contends that the verdict for $5,000 in his favor was so grossly inadequate as to require that it be set aside as the undoubted result of passion, prejudice, mistake or partiality on the part of the jury. The difficulty with his position is that a motion for a new trial, which is a prerequisite to relief on this ground, was never made. R.R. 1:5-3(a), made applicable here by R.R. 2:5. In any case, the point is not important since we are reversing for other reasons and plaintiff will have a new trial.
Plaintiff next challenges the admission into evidence over objection of the deposition of Dr. Rolf E. Johnson, one of defendants' examining doctors. Dr. Johnson, an orthopedic surgeon, first examined plaintiff some 16 days after the accident and made six other examinations thereafter, the last on May 8, 1964. In December 1965 Dr. Johnson was found to be suffering from a heart disorder involving high blood pressure, hypertension and hypertensive cardiovascular disease. In September 1966, shortly before the trial date, defendants served notice of the taking of his deposition. Since plaintiff did not appear or request that it be adjourned, the deposition was taken and later offered in evidence at the trial. In support of its admission Dr. Feinberg, Dr. Johnson's treating physician, testified that in his opinion Dr. Johnson was not able to appear and testify. Although no contradictory testimony was introduced, plaintiff now contends that since it was conceded that Dr. Johnson was able to be about and attend to his ordinary duties, his deposition should have been excluded and he should have been required to appear personally. We are satisfied that the trial judge did not commit an abuse of discretion in admitting the deposition. R.R. 4:16-4(c)(3). Dr. Feinberg testified that Dr. Johnson's heart condition was such that it would become aggravated when he became excited or upset. He related that Dr. Johnson's last encounter with plaintiff had been so upsetting as to bring about a cardiac attack (characterized by irregular heartbeat and shortness of breath) and opined that, "because of the potential seriousness *145 and danger" involved, he was not able to appear and testify.
Plaintiff next challenges the exclusion of the testimony of certain of his witnesses whose names had not been furnished in the answers to interrogatories served by his attorney upon defendants. R.R. 4:23-1 et seq. In the answer to an appropriate interrogatory, only the names of plaintiff and defendant Keppler were originally submitted. Plaintiff's answers were later amended, but only to include the names of two physicians. At the trial plaintiff represented that he desired to call four witnesses whose names had not been furnished defendants by way of answers to interrogatories or otherwise. Two of these, Joseph Meischeid and plaintiff's wife, Ellen Falcone, were actually present, but it is not clear as to whether the remaining two were in court. The trial judge relaxed the rule to permit Mrs. Falcone  and also Dr. Stein, plaintiff's expert medical witness, whose name had also been omitted  to testify. R.R. 1:27A. Plaintiff now complains of the failure to further relax the rule so as also to permit the testimony of Meischeid and the two unnamed witnesses referred to.
We cannot say that the trial judge was in error in declining further to relax the rule. Evtuch v. Hudson Bus Transportation Co., 7 N.J. 167 (1951); Kronmiller v. Caruso, 57 N.J. Super. 331 (App. Div. 1959). Plaintiff should have brought his answers to defendants' interrogatories up to date at least 20 days before the time set for trial. R.R. 4:23-12. After that date amendments were to be allowed only for extraordinary or compelling reasons, or to prevent manifest injustice, and in no case were they to be allowed at the trial where the subject matter of the proposed amendment was known to the party seeking leave to amend more than ten days prior to trial. Ibid. In determining whether relaxation of the rule should be permitted the trial court is allowed broad discretion. Cf. State v. Reynolds, 41 N.J. 163 (1963), certiorari denied 377 U.S. 1000, 84 S.Ct. 1934, 12 L.Ed.2d 1050 (1964), rehearing *146 denied 379 U.S. 873, 85 S.Ct. 22, 13 L.Ed.2d 81 (1964). We find no abuse of discretion here. The situation with which the court was confronted differed substantially from that in Gibilterra v. Rosemawr Homes, Inc., 32 N.J. Super. 315 (App. Div. 1954), affirmed 19 N.J. 166 (1955), where there had been a motion for a mistrial following the exclusion of the testimony of an expert witness which was vital to plaintiff's case, and a new trial was granted. Here there was no motion for a mistrial (or for dismissal without prejudice) and we are not advised that the testimony of these three lay witnesses would have been more than cumulative to testimony given by other witnesses.
Plaintiff next complains of the exclusion by the trial judge of a portion of the medical record of plaintiff's deceased treating physician, Dr. Pohlidal. His treatment of plaintiff began on the day of the accident and his record was verified through the deposition of his then medical secretary whose duty it had been to make up the medical record of each patient for him from his longhand notes. The trial judge held the record of plaintiff's treatment to be admissible under the Business Records as Evidence Act, N.J.S. 2A:82-35, but deleted therefrom the doctor's diagnosis of a herniated intervertebral disc. Plaintiff urges that this exclusion constituted prejudicial error. Defendants argue that since the diagnosis represented the doctor's opinion it was inadmissible.
The statute in question, N.J.S. 2A:82-35,[1] provides:
"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."
*147 The basic theory underlying the admissibility of such records was set forth in Mahoney v. Minsky, 39 N.J. 208 (1963) as:
"* * * [R]ecords which are properly shown to have been kept as required normally possess a circumstantial probability of trust-worthiness, and therefore ought to be received in evidence unless the trial court, after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence. The last clause of the statute that the books should be accepted `if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission,' confers considerable discretion upon the trial judge. * * * Once that discretion has been exercised the holding will not be disturbed if supported by substantial even though conflicting evidence or inferences therefrom." (at p. 218)
Here, the trial judge found, and we agree, that the doctor's record came within the ambit of N.J.S. 2A:82-35. Cf. State v. Taylor, 46 N.J. 316, 330-333 (1966), certiorari denied 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). We are concerned only with the validity of the excision of the doctor's diagnosis.
We find no case in which the issue has been directly passed upon in this State. However, in Carroll v. Houtz, 93 N.J. Super. 215 (App. Div. 1966), we held that the records of the county physician of Union County were admissible in their entirety under N.J.S. 2A:82-35, notwithstanding that they contained a laboratory report on specimens of blood and brain tissue which had been submitted to an outside laboratory for analysis. And in Webber v. McCormick, 63 N.J. Super. 409, 416 (App. Div. 1960) it was held that an X-ray report which was part of a hospital report was admissible notwithstanding the lack of proof of the qualifications of the technician who had made it.
Problems such as the present one generally arise under the Federal Shop Book Rule, 28 U.S.C.A. § 1732, or under state statutes patterned after the proposed Uniform Business Records as Evidence Act upon which our own statute is based. Our examination of the cases decided thereunder in other jurisdictions reveals a considerable *148 divergence of opinion as to the admissibility of such diagnoses. See Thomas v. Hogan, 308 F.2d 355, 358-360 (4 Cir. 1962). We take the view that the better reasoned cases favor their admission. D'Amato v. Johnston, 140 Conn. 54, 97 A.2d 893, 38 A.L.R.2d 772 (Sup. Ct. Err. 1953); Terrasi v. South Atlantic Lines, 226 F.2d 823 (2 Cir. 1955), certiorari denied 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 855 (1956); Buckminster's Estate v. Commissioner, 147 F.2d 331 (2 Cir. 1944); Reed v. Order of United Commercial Travelers of America, 123 F.2d 252 (2 Cir. 1941); Glawe v. Rulon, 284 F.2d 495 (8 Cir. 1960); Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (Sup. Ct. 1956); contra, Mullican v. United States, 252 F.2d 398, 404 (5 Cir. 1958); Baltimore and O.R. Co. v. O'Neill, 211 F.2d 190 (6 Cir. 1954), reversed on other grounds, 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747 (1954); Baltimore and O.R. Co v. Zapf, 192 Md. 403, 64 A.2d 139, 6 A.L.R.2d (Ct. App. 1949).
On principle, the reasoning which justifies the admission of laboratory and X-ray reports contained in a hospital record equally supports the admissibility of a medical diagnosis made by the treating physician. Such a diagnosis is no more than the opinion of a scientific expert (here a doctor of medicine) who has examined the patient, heard his statement and observed his symptoms. As was said in Long v. United States, 59 F.2d 602, 603 (4 Cir. 1932), "[i]t approximates a statement of fact, being in reality what the physician observes when he views [a patient] with the trained eye of an expert." Whether the patient was treated in a hospital or in a doctor's office, the reasoning which would support or reject its admission as part of a business record would be the same.
In D'Amato v. Johnston, supra, after discussing a number of cases which deny admissibility to a diagnostic entry in records which are otherwise admissible, the court held that an entry which had diagnosed plaintiff's condition as intoxication *149 was admissible under a Connecticut statute designed to accomplish the same end as our own. It there held:
"In the present case, therefore, the question is whether the fact that D'Amato was intoxicated when he entered the hospital was relevant to a proper diagnosis of his injuries and a proper treatment of them. The statute provides that an entry shall be admissible `if the trial judge shall find that it was made in the regular course of any business.' This means that the relevancy of the entries concerning D'Amato's intoxication to the hospital's business was a preliminary question of fact for the trial judge to decide. We may not interfere with the trial judge's decision unless it is one which he could not reasonably have reached. Obviously, his decision [to allow it] in this case was not unreasonable. Reed v. Order of United Commercial Travelers, 2 Cir., 123 F.2d 252, 253; Clark v. Beacon Oil Co., 271 Mass. 27, 28, 170 N.E. 836."
Compare State v. Taylor, supra, 46 N.J., at pp. 331-333.
A diagnosis of the type here involved normally possesses the "circumstantial probability of trustworthiness" referred to in Mahoney v. Minsky, supra, 39 N.J., at p. 218. It is the major premise from which the physician draws his conclusions as to the proper treatment to be rendered; normally, the progress of the patient depends upon its accuracy. Logic compels the conclusion that it should stand on the same ground as an observation of objective fact made by the doctor, or an X-ray or laboratory report on which he relied in the course of his treatment. Cf. Thomas v. Hogan, supra, 308 F.2d, at p. 360. Professor McCormick, while pointing out that courts more invariably admit records containing the simpler type of reports, such as X-rays and blood tests than the more controversial ones involving diagnoses by physicians, states that the majority view which admits even the latter is the "more expedient one." McCormick, Evidence, § 290, pp. 612-613 (1954). He says the rule "works for expediency by making it unnecessary to draw a difficult line, itself provocative of doubt and dispute; it serves the modern policy of free use of organizational records; * * *." We agree with these views.
*150 For the foregoing reasons we conclude that Dr. Pohlidal's diagnosis should not have been excluded.
We are satisfied that the excision of the doctor's diagnosis worked substantial prejudice to plaintiff and in all probability played a significant part in bringing about the claimed inadequacy of the jury's award in his favor. Among the injuries claimed to have been the result of the accident was a herniated intervertebral disc for which plaintiff was later operated upon by Dr. Stein. Defendants disputed both the presence of such a condition and that it had resulted from the accident. They endeavored to establish that plaintiff's trouble with his back was due to arthritis or, alternatively, that it resulted from a subsequent accident. While Dr. Stein testified that plaintiff's herniated disc was caused by the accident, his opinion might have been questioned by the jury since he had not seen plaintiff until several years after the accident. It was therefore of great importance that plaintiff be permitted to establish that Dr. Pohlidal, his first treating doctor, had diagnosed his injury as a herniated disc. This was especially so since two of the physicians who later treated him were unavailable, one having died and the other having allegedly given up private practice to work in industry. It can hardly be denied that the exclusion of Dr. Pohlidal's original diagnosis left a void in the case which could not otherwise be filled. It follows that the error was prejudicial and calls for reversal.
Plaintiff also complains of the refusal of the trial judge to permit the admission of certain additional "records" into evidence. We perceive no error in their exclusion. They consisted, for the most part, of letters and reports by doctors to plaintiff's former attorney or to other doctors and were not supported by proofs which qualified them for admission under the Business Records as Evidence Act. N.J.S. 2A:82-35. The exclusion of a copy of the Easton Hospital records showing physiotherapy treatments administered to plaintiff did not amount to an abuse of *151 discretion. Cf. Freddi-Gail, Inc. v. Royal Holding Corp., 45 N.J. Super. 471, 477 (App. Div. 1957), certification denied 25 N.J. 56 (1957). The original should have been produced or its absence explained, Storm v. Hansen, 41 N.J. Super. 249, 253 (App. Div. 1956), in which case a copy would have been admissible  provided it was legible. Moran v. Feitis, 69 N.J. Super. 531, 534 (App. Div. 1961), certification denied 36 N.J. 299 (1962). Here it is alleged that it was not.
Plaintiff next challenges the trial court's refusal to permit him to examine certain records or notes of defendants' expert medical witness, Dr. Waltman, which the latter had used to refresh his recollection while testifying. We are satisfied that the challenged ruling was erroneous and that plaintiff should have been permitted to examine and have the use of such records on cross-examination. State v. Mucci, 25 N.J. 423, 436 (1957); State v. Pacheco, 38 N.J. 120, 126-127 (1962); Hess v. Hess, 83 N.J. Super. 583 (App. Div. 1964); State v. Hunt, 25 N.J. 514 (1958). We find it unnecessary to determine whether the error was prejudicial in view of our conclusion that there must be a new trial in any event.
We have examined the remaining points raised by plaintiff as calling for reversal and find them to be without merit.
Plaintiff finally urges that, if his contentions on appeal be sustained, there should be a new trial as to the issue of damages only because defendants did not cross-appeal on the issue of liability. Defendants contend that the issues of damages and liability are so interrelated that a new trial, if granted, must include both issues.
It is well settled that in our sound discretion we may limit the retrial of a case to the question with respect to which the verdict is found to be wrong. Terminal Const. Corp. v. Bergen County, etc., Dist. Authority, 18 N.J. 294, 341 (1955). Thus, when the issue of liability has been clearly and properly decided against a defendant and the error relates only to the quantum of recovery, the retrial *152 of the case may be limited to the question of damages. Coll v. Sherry, 29 N.J. 166, 177 (1959). An exception to this rule is recognized where the amount of the verdict clearly indicates a compromise, Kopec v. Kakowski, 34 N.J. 243, 248 (1961), or where the verdict is so excessive as to taint the entire judgment, Rommell v. United States Steel Corp., 66 N.J. Super. 30, 49 (App. Div. 1961), certification denied 34 N.J. 580 (1961).
Here the prejudicial error which compels a new trial bore solely upon the issue of damages. The key question on that issue was whether plaintiff had sustained a disc injury in the accident. The exclusion of the diagnosis of his treating doctor, when offered as part of his medical record, deprived plaintiff of evidence which was basic to the allowance of recovery for this phase of his injuries. Any prejudice arising from the refusal to permit him to examine the notes of defendants' expert medical witness was related solely to this issue. Having in mind the paucity of proof of the presence of a disc injury due to the accident at the beginning of plaintiff's medical treatment, which resulted from the court's ruling referred to, we cannot say that the verdict rendered by the jury demonstrates either a compromise or such excessiveness as would indicate passion, prejudice, partiality or mistake.
While the right to limit a new trial to damages is one which should be exercised sparingly and with great caution, Rommell v. United States Steel Corp., supra, at p. 48, we are satisfied that here the issues of liability and damages were readily separable and the trial error which compels a new trial did not taint the jury's finding on the issue of liability. Cf. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 149 (1950). We recognize that while there is no cross-appeal under which defendant seeks to set aside the verdict as to liability, we may nevertheless direct a new trial of the entire issue when such a course is imperative to serve the ends of justice. Juliano v. Abeles, 114 N.J.L. 510, 515 (Sup. Ct. 1935). We are satisfied that such is *153 not the case here, where the issue of liability has been fully and fairly tried and decided against defendants. Coll v. Sherry, supra, 29 N.J., at p. 177; Dahle v. Goodheer, 38 N.J. Super. 210 (App. Div. 1955).
Reversed and remanded for a new trial as to damages.
NOTES
[1] See Evidence Rule 63 (13) and paragraph (5) of Evidence Rule 62, effective September 11, 1967.