129 N.J. Super. 393 (1974)
324 A.2d 42
DOROTHY CORRIDON, AS GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JAMES F. CORRIDON, PLAINTIFF-RESPONDENT,
v.
CITY OF BAYONNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND PATROLMAN FRANK SOLAN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1974.
Supplemental Memoranda Received May 3 and 8, 1974.
Decided July 16, 1974.
*394 Before Judges KOLOVSKY, FRITZ, and CRANE.
Mr. M. Stanley Susskind argued the cause for appellant City of Bayonne.
*395 Mr. Richard J. Badolato argued the cause for appellant Frank Solan (Messrs. Morgan, Melhuish, Monaghan, McCoid and Spielvogel, attorneys).
Mr. Ira J. Zarin argued the cause for respondent (Messrs. Zarin and Maran, attorneys).
PER CURIAM.
Defendant City of Bayonne appeals from a judgment entered on an adverse jury verdict in a negligence action founded upon the fatal shooting of decedent by defendant Solan, a police officer employed by the city who was not on duty at the time of the occurrence. Solan "cross appeals," obviously only as a protective measure, for in the conclusion of his brief he asks for affirmance of the judgment entered against the city and him.
The sole ground for Bayonne's appeal is the argument that a municipality has no liability for damages "caused by the unlawful conduct of an off-duty policeman." The difficulty with such an overly broad statement is that it fails at the threshold to distinguish between responsibility of the municipality for its primary negligence and that imposed upon it under the doctrine of respondeat superior. The distinction is important here because the record is totally devoid of any evidence proving, directly or by inference, that Solan was acting within the scope of his employment.[1] In considering *396 the city's attack on the sufficiency of the evidence we need concern ourselves only with plaintiff's charge against the city of primary negligence.[2]
The facts may be succinctly stated: Solan, in uniform, had volunteered to participate earlier in the day in question, along with a contingent of Bayonne police, in a Pulaski Day parade in New York. After the parade he had returned to a buffet at a Polish-American Home in Bayonne. It was not until he had left there much later in the evening, and was presumably on the way home  Solan had no recollection of events after the buffet until he was being transported to headquarters in a squad car after the shooting  that the event occurred. Solan, apparently then intoxicated, stopped in another bar and there, during an apparently normal conversation with James F. Corridon, drew his service revolver, put it to Corridon's head and shot him dead.
As has been noted, despite the fact Solan was in uniform and armed with his service revolver (as indeed the regulations required him to be at all times, even when off duty), there was no evidence to place him within the scope of his employment or to suggest he was in the furtherance of his employer's business when the shooting occurred.
On the other hand there is credible evidence which, if believed by the jury, proved that the city knew or might reasonably have known of Solan's intoxication in public places on a number of occasions between his employment in 1963 and the shooting in 1969. It may readily be inferred that, pursuant to regulation, Solan was armed at those times as he was at the time in question. There is direct evidence of his being armed on at least some occasions when he drank *397 to a point of falling asleep at the bar. A witness testified that it was "standard procedure" for one bartender to take Solan's gun and put it away when he started drinking.
These facts, if credited, demonstrate a breach of duty by the city. It is clear that the hazard of firearms is so extraordinarily great that a municipality has a plain duty of care in its supervision of those whom it arms. McAndrew v. Mularchuk, 33 N.J. 172 (1960). If a municipality is required "to use care commensurate with the risk" in providing adequate training and experience in the proper handling and use of weapons, as in McAndrew, it certainly is no less responsible for appropriate action when situations unreasonably increasing the already great hazard become known to it. The duty is one to abate such an extraordinary risk if in related circumstances danger to others is reasonably to be perceived. McCrink v. City of New York, 296 N.Y. 99, 71 N.E.2d 419 (1947); cf. Stoelting v. Hauck, 32 N.J. 87, 95-96 (1960).
We have no doubt that under the evidence adduced in this case a jury question was made out as to Bayonne's negligence in its apparent neglect of this duty. Had this been all that was given to the jury for its consideration we would have no trouble affirming.
However, the judge submitted the matter of Bayonne's liability to the jury on the alternate theory of respondeat superior as well. Since there was no competent evidence or reasonable inference therefrom that Solan was within the scope of his employment at the time of the shooting, the jury should not have been permitted to consider this theory in its deliberations with respect to Bayonne's negligence.[3] The general verdict  the jury said only, "We the *398 jury find that both of the defendants are guilty of negligence"  makes it impossible for us to determine, without speculation, whether liability was predicated on the respondeat superior theory or on the primary liability evidence, so there must be a reversal and a new trial. Kulas v. Public Service Elec. and Gas Co., 41 N.J. 311, 320 (1964); McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 303 (1970).
We are not unaware of the fact that the attorney for the city concurred against a suggestion of submission to the jury of written interrogatories, thus completing a "majority" that the judge (wrongfully) determined should prevail, whereby it might be said the city invited the ambiguity which arose (see State v. Schmieder, 5 N.J. 40, 46 (1950)). On the other hand, we note Bayonne's forceful protestations to the invocation of respondeat superior on its motion for dismissal at the end of plaintiff's case and at the close of the case, as well as its objection, following the charge, to the facts recited by the judge some of which were directly related to the question of agency. In such a circumstance we are not inclined to fabricate a waiver or an estoppel from counsel's conduct.
Since nothing appears in derogation of the verdict against the defendant Solan, we permit that verdict to remain. Where the issue requiring reversal is fairly separable from the other issues involved in the matter, and where, as here, the best interests of justice will be served by granting a partial new trial, we may set aside only so much of the judgment as is infected by the error and preserve the balance. Terminal Const. Corp. v. Bergen Cty., etc., Dist. Authority, 18 N.J. 294, 341 (1955).
The judgment against defendant City of Bayonne is reversed and remanded for a new trial. Except for such reversal, the judgment below is affirmed. No costs to any party.
NOTES
[1] In an effort to hold the city in as a responsible defendant, Solan in his brief argues to the contrary. He asserts, from the facts (which are set out below in the text of this opinion) that liability "could be predicated" upon respondeat superior on the theory that the parade was within the scope of the employment, "the evidence at trial indicates that he had become intoxicated while at the Polish Home," and therefore "when this unfortunate incident occurred he had not yet divorced himself from connection with his employment." Such a tenuous "connection" is not enough despite the fact that, as argued, Solan was in uniform and in the company of another officer. While Snell v. Murray, 121 N.J. Super. 215 (App. Div. 1972), aff'g 117 N.J. Super. 268 (Law Div. 1971) is distinguishable on its facts, there is here, as there, a palpable absence of evidence placing the conduct of defendant in any respect "within the scope of his employment."
[2] In a convoluted argument Bayonne asserts the authority of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. The legislation plays no part at all here: it was not effective until more than 2 1/2 years after the event in question. The Legislature specifically provided for the inapplicability of the act in such case. N.J.S.A. 59:12-3; Barney's Furniture Warehouse v. Newark, 62 N.J. 456 (1973).
[3] This issue was not precisely raised here by appellant, although it did so argue in support of its motion for dismissal during the trial. However, our concern for the rule and essential justice provoked our inquiry of counsel at oral argument. We sought and received supplemental written memoranda.