255 N.J. Super. 24 (1992)
604 A.2d 614
DAVID VON BORSTEL, PLAINTIFF-RESPONDENT,
v.
ROGER D. CAMPAN AND NEW JERSEY TRANSIT RAIL OPERATIONS, INC., DEFENDANTS-APPELLANTS, AND JOHN T. MIKLENCIC, AMTRAK COMMUTER SERVICES, CORP., NATIONAL RAILROAD PASSENGER CORP., AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1992.
Decided March 18, 1992.
*26 Before Judges MICHELS, HAVEY and CONLEY.
Robert J. Del Tufo, Attorney General of New Jersey, attorney for appellants (Michael R. Clancy, Assistant Attorney General of New Jersey, of counsel; Grace A. Dennigan and Peter A. Drucker, Deputy Attorneys General, on the brief).
Ira J. Zarin, attorney for respondent (Jeffrey E. Strauss, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted leave to defendants Roger D. Campan (Campan) and New Jersey Transit Rail Operations, Inc. (New Jersey Transit) to appeal from an order of the Law Division that granted plaintiff David Von Borstel a new trial as to damages only in this assault and battery action.
This action arises from an incident wherein a New Jersey Transit employee allegedly struck plaintiff in the head with a metal flashlight. Plaintiff sustained multiple contusions and a depressed skull fracture which required two neurological procedures to repair. Plaintiff also suffers from a post-traumatic seizure disorder and is required to take anti-convulsant medication to control his seizures. Plaintiff instituted suit against defendant New Jersey Transit and its employees Campan and John T. Miklencic (Miklencic), Amtrak Commuter Services, Corp. (Amtrak), National Railroad Passenger Corp. and the State of New Jersey. The complaint sought both compensatory and punitive damages.
Following trial, the jury, in answer to special interrogatories, (1) found that Campan committed an assault and battery upon plaintiff, which was a proximate cause of his injuries and damages; (2) awarded plaintiff $50,000 in compensatory damages and $750 in punitive damages, and (3) found that Miklencic was neither negligent nor committed an assault and battery upon plaintiff which was the proximate cause of his injuries. *27 The trial court molded the verdict accordingly, awarding plaintiff $50,000 in compensatory damages against Campan and New Jersey Transit and $750 in punitive damages against Campan.[1]
Thereafter, plaintiff moved for an additur or, alternatively, a new trial on damages only. Campan moved for a judgment n.o.v. with respect to the punitive damage award. Following argument, the trial court found the $50,000 compensatory damage award to be "shockingly low" in that plaintiff was awarded only about $17,000 over his medical expenses, which were $32,967. The trial court also found that the low damage award resulted from prejudice and bias against plaintiff who was a convicted felon and an alcohol and drug abuser. The trial court concluded that the jury's verdict constituted a miscarriage of justice which should not be allowed to stand and ordered a new trial as to damages only. The trial court also stated that it had rejected using the technique of additur because the jury had found that Campan's conduct warranted punitive damages but had awarded only $750 in punitive damages. This award, according to the trial court "goes hand in hand with the, I think, shockingly low verdict on the compensatory damages." The trial court stated that it would not attempt to give an additur on punitive damages because that portion of the damage award is dependent upon the jury's evaluation of the nature of defendant's conduct. We granted Campan and New Jersey Transit leave to appeal.
Defendants contend on appeal that the trial court erred in ordering a new trial as to damages on the ground that the jury's verdict represented a miscarriage of justice. Alternatively, they argue that if the verdict was inadequate, the trial court *28 should have granted a new trial on all issues.[2]
A trial court may grant a motion for a new trial "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witness, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). However, in making this decision, the trial judge must not act as a "thirteenth and decisive juror." Dolson v. Anastasia, 55 N.J. 2, 6, 258 A.2d 706 (1969). The trial courts should "resist the natural temptation to substitute their judgment for that of the jury." Baxter v. Fairmont Food Co., 74 N.J. 588, 597, 379 A.2d 225 (1977). Therefore, a jury's verdict "is entitled to very considerable respect. It should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Id. at 597-98, 379 A.2d 225. A trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injury and the resulting disability as to shock his conscience and to convince him that to sustain the award would be manifestly unjust. Id. at 596, 379 A.2d 225; Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 236, 276 A.2d 861 (1971); Sweeney v. Pruyne, 67 N.J. 314, 315, 338 A.2d 193 (1975); Tonelli v. Khanna, 238 N.J. Super. 121, 131, 569 A.2d 282 (App.Div.), certif. denied, 121 N.J. 657, 583 A.2d 344 (1990); Tonsberg v. VIP Coach Lines, Inc., 216 N.J. Super. 522, 531, 524 A.2d 460 (App.Div. 1987).
In reviewing a trial judge's decision to interfere with the quantum of damages awarded by a jury, the appellate court "must be concerned with the same norm of decision." Baxter, supra, 74 N.J. at 599, 379 A.2d 225; Tonsberg, supra, 216 N.J. Super. at 531, 524 A.2d 460. The reviewing court must *29 accord due deference to the trial court's "feel of the case." Baxter, supra, 74 N.J. at 600, 379 A.2d 225; Tonsberg, supra, 216 N.J. Super. at 531, 524 A.2d 460. However, the trial judge's decision "is not entitled to any special deference" when it concerns matters "apparent from the face of the record with respect to which he is no more peculiarly situated to decide than the appellate court." Baxter, supra, 74 N.J. at 600, 379 A.2d 225 (quoting Dolson, supra, 55 N.J. at 7, 258 A.2d 706). As Justice Hall stated, there must be some "wrongness" to justify a trial or appellate court overturning a jury verdict:
While this feeling of "wrongness" is difficult to define, because it involves the reaction of trained judges in the light of their judicial and human experience, it can be well said that that which must exist in the reviewing mind is a definite conviction that the judge [the jury] went so wide of the mark, a mistake must have been made. This sense of "wrongness" can arise in numerous ways  from manifest lack of inherently credible evidence to support the finding, obvious overlooking or undervaluation of crucial evidence, a clearly unjust result, and many others. [State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964) (quoted in Baxter, supra, 74 N.J. at 599, 379 A.2d 225)].
Applying the foregoing principles here, we are satisfied that the trial court properly granted a new trial as to damages. Despite the lack of testimony by plaintiff as to actual pain and suffering or economic loss, the severity of his injuries, their permanent effects and the medical procedures required to treat the same support the trial court's conclusion that the jury's compensatory damages verdict was shockingly low and a miscarriage of justice. As the trial court pointed out, plaintiff's injuries were "very severe." Plaintiff was struck in the head with such force as to cause a depressed skull fracture which rendered him unconscious. He also exhibited multiple contusions of the brain, indicative of multiple trauma inflicted on his skull, and a large parietal laceration which required suturing.
Due to the nature of his injuries, plaintiff was required to undergo two separate neurosurgical procedures. In the first brain surgery, a blood clot was removed from plaintiff's brain as well as fragments of his skull bone. The defect in plaintiff's skull was left open and only skin was left to cover the hole in his skull. In order to prevent further injury or brain damage *30 from plaintiff's seizure activity, a second neurosurgical procedure was performed to place mesh material over the defect in his skull. According to plaintiff's medical expert, plaintiff's post-traumatic seizure disorder was caused by the head trauma inflicted upon plaintiff in the incident in question. Plaintiff's medical expert opined that plaintiff will continue to experience seizure activity for the rest of his life and will never be able to stop taking his anti-convulsant medication because he will have seizures if he does so.
Furthermore, contrary to defendants' argument, the evidence demonstrates that plaintiff's post-seizure disorder is permanent and was caused by head trauma rather than drug and alcohol usage. Plaintiff's medical expert testified that plaintiff's seizure disorder is permanent, and that plaintiff would never be able to go off his anti-convulsant medication. According to plaintiff's medical expert, plaintiff's long-term use of drugs and alcohol was not the cause of his present seizure activity. In fact, despite plaintiff's admitted long-term abuse of drugs and alcohol, he never had any seizures prior to the incident in question when he was struck in the head.
In sum, we are satisfied the trial court did not abuse its discretion in finding that the compensatory damage award was shockingly low and constituted a miscarriage of justice in ordering a new trial on damages.
However, while we agree with the trial court that a new trial as to damages was required because of the shockingly low damage award, we are thoroughly convinced that the trial court should have ordered a new trial as to liability as well. It is fundamental that the authority to order a new trial as to damages should be "exercised sparingly and with great caution," Rommell v. U.S. Steel Corp., 66 N.J. Super. 30, 48, 168 A.2d 437 (App.Div.), certif. denied, 34 N.J. 580, 170 A.2d 544 (1961), and it should be employed "only where it is apparent that the rights of the parties will not be unjustly affected thereby." Coll v. Sherry, 29 N.J. 166, 177, 148 A.2d 481 (1959). *31 Where damages are so grossly excessive as to indicate prejudice, partiality or passion on the part of the jury suggesting that the liability verdict is tainted or that there was a compromise verdict as to liability, a new trial must be granted as to all issues. Taweel v. Starn's Shoprite Supermarket, Inc., supra, 58 N.J. at 231, 276 A.2d 861; Tronolone v. Palmer, 224 N.J. Super. 92, 98, 539 A.2d 1224 (App.Div. 1988).
A shockingly low damage verdict may invoke the same concerns raised by a grossly excessive verdict. As we explained in Tronolone v. Palmer, supra, "[a]lthough a shockingly low damage verdict does not necessarily signify a fault in plaintiff's liability verdict, it may imply defects in the work of the court or jury." See Esposito v. Lazar, 2 N.J. 257, 259-60, 66 A.2d 172 (1949). Furthermore, unless the liability portion of the verdict is separable and otherwise sound, it should not be allowed to stand and the retrial should not be limited to the issue of damages. See Bitting v. Willett, 47 N.J. 6, 8, 218 A.2d 859 (1966); Coll v. Sherry, supra, 29 N.J. at 177, 148 A.2d 481; Esposito v. Lazar, supra, 2 N.J. at 259-60, 66 A.2d 172; Tronolone, supra, 224 N.J. Super. at 98, 539 A.2d 1224; Falcone v. N.J. Bell Tel. Co., 98 N.J. Super. 138, 152, 236 A.2d 394 (App.Div. 1967), certif. denied, 51 N.J. 190, 238 A.2d 475 (1968); Rommell, supra, 66 N.J. Super. at 48, 168 A.2d 437. See also McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 173, 521 A.2d 851 (App.Div.), certif. denied, 108 N.J. 219, 528 A.2d 36 (1987); Corridon v. City of Bayonne, 129 N.J. Super. 393, 398, 324 A.2d 42 (App.Div. 1974); Panko v. Grimes, 40 N.J. Super. 588, 599, 123 A.2d 799 (App.Div. 1956); 58 AM.JUR. 2D New Trial §§ 68, 69 (1989).
Here, the trial court found that the inadequate damage award was the result of prejudice or bias against plaintiff because he was a convicted felon and had been a chronic drug and alcohol abuser. This alleged prejudice and bias, resulting in an inadequate damages award, plainly tainted the liability verdict, requiring retrial of all issues. In cases where, as here, *32 there is close or questionable liability and an inadequate damage verdict, a new trial should not be limited to the issue of damages. Schwartz v. North Jersey Building Contractors Corp., 38 N.J. 9, 12, 182 A.2d 865 (1962); see Purpura v. Public Service Elec. & Gas Co., 53 N.J. Super. 475, 478, 147 A.2d 591 (App.Div. 1959). This is because the inadequate damage award may indicate that the jury reduced damages due to its doubts as to the fundamental issue of liability. Kopec v. Kakowski, 34 N.J. 243, 247-48, 168 A.2d 23 (1961). Similarly, the low verdict might also represent an agreement between the jurors to reduce the verdict because of the perception that plaintiff contributed to the cause of his injuries. 58 AM.JUR.2d, supra, at § 69. Thus, the jury may reduce damages "in order to salve their consciences." Rommell, supra, 66 N.J. Super. at 49, 168 A.2d 437. Even when a defendant does not cross-appeal as to liability, the appellate court may order a new trial as to all issues if it appears there has been a compromise verdict. Falcone v. N.J. Bell Tel. Co., supra, 98 N.J. Super. at 152, 236 A.2d 394.
Here, the record suggests that the jury may have harbored doubts as to the issue of liability or reduced the damages because of a belief that plaintiff somehow contributed to his injury. The issue of liability was strenuously contested. Plaintiff was admittedly drunk at the time of the incident and the defense witnesses indicated that plaintiff acted in a belligerent and aggressive fashion through the entire encounter. Campan testified that when he confronted plaintiff on the station platform, plaintiff had a red metal tool box which he swung at Campan, striking him in the shoulder. Campan then put his hands up to protect himself and began making flailing motions with his flashlight to keep back plaintiff and his companion, but he did not recall if he struck either of the two men. According to Campan, he then saw plaintiff slumped over in a kneeling position with his head and shoulder resting on a railing.
Campan's version was corroborated by Derrick Freeman, the New Jersey Transit trainman on duty. Freeman indicated that *33 plaintiff had swung the tool box at Campan and that Campan put his arms up to defend himself. Freeman did not see Campan strike plaintiff with the flashlight, but indicated that he next saw plaintiff lying on the station platform. Similarly, Miklencic testified that he saw plaintiff attempt to hit Campan and that he saw plaintiff fall and strike his head on a railing on the platform. Miklencic did not see what caused plaintiff to fall, but did clearly see that his head hit the railing. Likewise, Vincent Gerbino, an Amtrak employee who was a passenger on the train, stated that he saw Campan pushing plaintiff, but did not see him strike plaintiff with his flashlight. Moreover, Gerbino also saw plaintiff fall and strike his head on the railing.
Against this testimony, plaintiff testified that Campan raised the flashlight and struck him without provocation by plaintiff. Plaintiff offered no eyewitness testimony to corroborate his version of the events. However, plaintiff did present expert testimony that he had suffered multiple injuries inconsistent with a single blow from the flashlight or with striking his head on the railing.
In light of the conflicting evidence in the record, it appears entirely possible that the jury might have reduced its verdict due to the close question of liability or because it believed that plaintiff's behavior may have precipitated the conflict which caused his injuries. Thus, the liability portion of the verdict can be viewed as being a compromise, and was not the conscientious judgment of the jury, tainting the entire verdict. See Kopec v. Kakowski, supra. In any event, we cannot conclude from this record that the verdict as to liability was sound and free from defect in the work of the jury. In sum, the interests of justice will be best served by a new trial as to all issues and not limited to damages.
Accordingly, the Law Division's order granting plaintiff's motion for a new trial on the issue of damages only is reversed and a new trial ordered as to liability and compensatory damages.
NOTES
[1] Plaintiff consented to a dismissal of the complaint against defendants Amtrak Commuter Services, Corp., National Railroad Passenger Corp. and the State of New Jersey.
[2] Since plaintiff now has withdrawn any and all claims for punitive damages it is unnecessary for us to consider whether the punitive damage award was sustainable.