841 A.2d 931 (2004)
366 N.J. Super. 525
Robert E. LOVE, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 2003.
Decided February 17, 2004.
*932 Wilentz, Goldman & Spitzer, attorneys for appellant (J. Michael Farrell, Philadelphia, PA, on the brief).
Landman Corsi Ballaine & Ford, attorneys for respondent (Gerald T. Ford, on the brief).
Before Judges KESTIN, CUFF and WINKELSTEIN.
The opinion of the court was delivered by KESTIN, P.J.A.D.
This is an action pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C.A. §§ 51 to -60, which permits railroad workers to recover for injuries suffered on the job in specified circumstances. Plaintiff appeals from a judgment in his favor on the ground that the jury verdict upon which it is based was inadequate and inconsistent. The trial court denied plaintiff's motion for judgment n.o.v. or, in the alternative, for a new trial or additur.
The parties had stipulated liability and had agreed that the only issues for jury consideration were medical causation and compensatory damages. Based upon the proofs, the jury returned a verdict responding in the affirmative to the question: "Did the accident of September 24, 1995 cause or contribute to any injuries sustained by the plaintiff[.]" The jury then responded to the remaining question submitted to it, awarding $65,000 for lost wages and $0 for pain and suffering. The verdict sheet reported a 5-1 vote on each element of damages.
On appeal, plaintiff argues he is entitled to a new trial on damages because the verdict was inconsistent in awarding economic damages for lost wages but failing to award damages for pain and suffering. He contends in further points on appeal that the trial court erred:
B. ... in permitting the defendant to introduce evidence that the plaintiff was or had received railroad retirement benefits... [and] that such evidence was prejudicial and created unfair prejudice[;]
C. ... in allowing the defendant to cross-examine the plaintiff with reference to mitigation evidence and argue the plaintiff's failure to mitigate damages without instructing the jury that the defendant had the burden of proof with respect to mitigation and without *933 requiring that the defendant produce evidence that the plaintiff was physically able to perform an identified and available job[;]
D. ... in failing to give the jury [a] complete ... instruction on pre-existing injuries and conditions ... [in the light of the testimony of] plaintiff's experts... thus permitting the jury to conclude that the plaintiff was not entitled to recover damages if his underlying conditions had originated from other causes even though the work injury aggravated or exacerbated those conditions[; and]
E. ... in permitting the defendant to argue that the plaintiff's disability and chronic pain had causes other than his work injury where, as here, the defendant did not present any expert medical testimony in support of an alternative theory of causation and the plaintiff's medical experts clearly opined within a reasonable degree of medical certainty that the railroad accident played a part in the aggravation and exacerbation of the plaintiff's symptoms satisfying the FELA causation standard.
We do not consider jury verdicts such as those returned here to be necessarily inconsistent. In fitting circumstances, a jury might welland quite rationallydetermine, on the one hand, that a showing of medical causation had been made and that a plaintiff's loss of income was a direct consequence of the accident, while at the same time concluding that the plaintiff had not discharged his burden of proving the pain and suffering adequate to support a damages verdict therefor. In order to determine whether an apparent inconsistency was justified by the record, we must examine and evaluate the proofs for that purpose in the light of the arguments advanced by the parties.
At the time of the incident, on September 24, 1995, plaintiff, Robert L. Love, about fifty-eight years of age, had been employed by defendant, National Railroad Passenger Corporation (Amtrak), for some nineteen years. He was working as a trackman, standing in a hole, digging, along a section of defendant's rail line with six active tracks. A co-worker alerted plaintiff to the approach of a train, whereupon plaintiff jumped out of the hole. In doing so, he hit his knee on a track and gauge and fell, with his back hitting the rail. According to plaintiff in his testimony at trial, as he lay where he had landed, "[his] back felt as like a cold chill was running from my back to the lower part of my back down through both legs all the way out to my feet." He experienced "very excruciating" pain.
Plaintiff's co-workers eventually helped him to his feet. He remained at the job site for the rest of the day without engaging in manual labor and without seeking medical attention.
When he arrived home, he testified, he was "stiff" and needed the help of his wife and son to get out of his car. He continued to experience stiffness and pain for the rest of the evening.
Plaintiff reported to work the next morning, informing his supervisor that he needed medical attention. A fellow employee took him to a hospital emergency room, where a physician recommended Percocet and advised plaintiff to refrain from bending, lifting and other exertions. Plaintiff, however, wishing to return to work and not be limited by that medication, declined the Percocet, took extra strength Tylenol and went back to the job for the rest of the day. A day or two later, "the pain was excruciating," and plaintiff saw a physician who administered "a pain blocker" by injection. According to plaintiff, although he saw that physician "two more times," "that was all" the therapy he received "just for pain."
*934 Plaintiff's testimony went on to describe his physical activities in the summer of 1995, which had included jogging, badminton, and weight lifting. He then related the progress of his condition after the September 24 incident, and the treatment he received. His knee was painful and would give out. Three knee surgeries were performed: in the spring of 1996, a year later, and in the fall of 1997. His back pain increased, and he eventually underwent back surgery. He also underwent knee replacement surgery on both knees. He testified to constant, intense back and knee pain and limitations. Some details are necessary to provide focus.
As the fall of 1995 progressed, "[plaintiff's] pain had kind of moved in a little bit and got a little more intense[.]" He consulted an orthopedist, Dr. Steven Berkowitz, whose expert testimony on behalf of plaintiff was presented to the jury in the form of a video-taped deposition. In the face of plaintiff's reported "problems with [his] knee," Dr. Berkowitz had advised that the jogging and weight lifting "had to stop[.]" Plaintiff continued to lift some weights while supine, but otherwise "did nothing different." He never modified his work schedule or functions.
In April 1996, plaintiff underwent his first knee surgery, an arthroscopic procedure on the left knee to repair "a complex tear of the posterior horn, which is the very back of the meniscus." Dr. Berkowitz testified that plaintiff had experienced a good result from this procedure, and he was discharged to return to work in early June.
About a month later, plaintiff saw Dr. Berkowitz's partner for back pain. According to the physicians' treatment records, plaintiff had "twisted his back in a slip the previous week[.]" Lodine, a "non-steroidal, anti-inflammatory medication," was prescribed "along with a home exercise program." Once again, plaintiff was discharged and returned to work. At trial, plaintiff testified that, in 1996, after the arthroscopic knee surgery, he received a series of "facet blocks" and another series of "epidurals" for his back pain. Dr. Berkowitz testified that he administered a series of "epidurals" in early 1996, before the knee surgery. He indicated that the back condition was traceable to injuries received in prior injuries from work-related and non-work-related traumatic events which had been "aggravated and exacerbated" by the workplace injury at issue here. Another medical expert whose video-taped deposition was also before the jury, offered a similar opinion regarding causation, i.e., aggravation and exacerbation by the workplace injuries, both as to the back injury and the knee injuries plaintiff had suffered.
Plaintiff continued to work with no modification in his schedule or duties until April 1997, when he underwent a second knee surgery on his left knee. A third surgical procedure occurred on the left knee in September 1997. Eventually, both knees were replaced in further surgical procedures. In December 1996, plaintiff had complained of recurrent knee pain. Dr. Berkowitz prescribed continuing administration of Lodine, along with "a hinged knee brace .... and physical therapy."
In January 1997, "[plaintiff] was still complaining of back pain radiating into his left lower extremity, and had another episode at work where his left knee gave out." The complaints continued, with Dr. Berkowitz prescribing that "[plaintiff] needed to complete his epidural steroid injections for the back problem .... [a]nd ... that he needed another arthroscopic surgery of his left knee."
Plaintiff testified that because of his continuing back problems and knee problems, *935 and his "numerous surgeries ... [he] just couldn't work anymore." He left work in April 1997. Plaintiff described his limited physical activity at home, culminating in back surgery, "a decompression laminectomy at the L4-5 and L5-S1 levels" by Dr. Goldstein, an orthopedic spine specialist, in mid-1998.
Plaintiff went on to testify in detail about the continuing pain he had experienced since the workplace incident at issue here, and the lifestyle limitations his injuries imposed. A surveillance video revealed to the jury showed plaintiff engaged in physical activity that tended to contradict the purport of his testimony.
Plaintiff makes the same primary argument on appeal as he did before the trial court on his motion for judgment n.o.v. or, in the alternative, for a new trial or additur. It is that the jury's verdict awarding $65,000 for lost wages on account of his departure from the job in 1997, but nothing for pain and suffering, was so fundamentally inconsistent as to require vacation and an order for a new trial. As we have noted, liability had been conceded and the case tried before the jury on medical causation and compensatory damages only. In addition to other witnesses, plaintiff presented the expert testimony of two physicians to establish medical causation and the extent of injury. Plaintiff's brief asserts that defendant rested without introducing
any medical evidence, any vocational evidence, or any evidence in support of a claim that the plaintiff could have mitigated his damages. Nor did the defense put on any evidence that [plaintiff] was not in pain or that he had not been working. Most importantly, the defense did not put on any evidence that [plaintiff's] diagnosis and conditions were not caused by or related "in whole or in part" to the September 1995, accident.
The jury, of course, could not make any award unless it found medical causation. It did so expressly, and it determined that plaintiff was entitled to a damage award for lost wages, i.e., that he had been disabled as a result of the incident as to be unable to work, at least for a period of time or to a limited extent. Given the finding of a medically causal connection between plaintiff's injuries and the on-the-job incident, and considering the extended medical treatment that resulted, including a series of surgeries, it follows that plaintiff was entitled to an award, as well, for any pain and suffering that could be established.
On the evidential record developed at trial, the jury might have been well warranted to take a skeptical view of plaintiff's allegations of lasting injury or long-term pain and suffering. Yet, there can be no question that plaintiff experienced some transitory pain and suffering, at the very least, as a consequence of each of the surgeries required, for the period of recovery, if not before and beyond. Nevertheless, the jury made no award whatsoever that would fairly compensate plaintiff for those logically inescapable periods of pain and suffering, however brief they may have been perceived to be, or however low a percentage of plaintiff's total pain and suffering the jury may have attributed to the incident at issue in relation to the pre-existing injuries. For this reason, even with the utmost regard that must be accorded a jury's evaluation of factual issues, see Baxter v. Fairmont Food Co., 74 N.J. 588, 597, 379 A.2d 225 (1977), we must view the verdict as rendered to be fatally inconsistent and clearly the result of mistake, compromise, passion or prejudice. Therefore, the trial court should have granted plaintiff's motion for a new trial.
Normally, in ruling on a motion for a new trial, R. 4:49-1, a trial judge *936 should not substitute her judgment for that of the jury with regard to the amount of damages awarded unless the sum is so disproportionate to the injuries and resulting disability as to shock the conscience and lead to a conviction that to sustain the award as rendered would be manifestly unjust. See Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 236, 276 A.2d 861 (1971). In pursuit of ultimate justice, however, a trial judge must intervene to correct an injustice when a damage award is patently inadequate or excessive, i.e., the result of mistake, compromise, bias, or prejudice, motivating factors that cannot be discounted or disregarded. See Von Borstel v. Campan, 255 N.J.Super. 24, 31, 604 A.2d 614 (App.Div.1992). On appeal, we apply the same standard to review the trial judge's disposition of a motion for a new trial. Id. at 28-29, 604 A.2d 614.
The corrective function is more easily discharged when the jury verdict entirely omits to make an award in a discrete category of damages where some award is manifestly appropriate, than when the claim is that an amount awarded is inadequate, compare Von Borstel, supra, 255 N.J.Super. at 26-32, 604 A.2d 614; see also Dombroski v. City of Atlantic City, 308 N.J.Super. 459, 706 A.2d 242 (App.Div. 1998), especially where minimal or no affirmative proofs were offered at trial to countervail the claimant's positions.
We reject defendant's argument that the Supreme Court's approval in Mahoney v. Podolnick, 168 N.J. 202, 222-23, 773 A.2d 1102 (2001), of the federal court approach in handling inconsistent verdicts disclosed before jury discharge by sending the matter back to the jury for further deliberations, requires us to adopt the draconian rule that "if trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is waived." Manes v. Metro-North Commuter R.R., 801 F.Supp. 954, 959 (D.Conn.1992)(quoting Lockard v. Missouri Pac. R.R. Co., 894 F.2d 299, 304 (8th Cir.1990)), aff'd, 990 F.2d 622 (2d Cir. 1993). Especially in the face of the paucity of affirmative defense proofs to countervail plaintiff's claims, including the pain and suffering directly resulting from the series of surgeries undeniably attributed, at least in part, to the incident at issue, we also reject defendant's argument that this verdict was not inconsistent. The out-of-state authorities defendant cites add no power to its assertion that this case is one in which a jury award of compensation for medical expenses without one for pain and suffering should not be disturbed on the ground that there was a reasonable basis for disbelieving that the claimant had experienced any pain and suffering or that a pre-existing condition or injury was the sole cause of the alleged pain and suffering. It would be all too easy to hold that we are bound by the jury's verdict because it resulted from an assessment of the evidence and embodied a rejection of plaintiff's position that he had suffered from the injuries experienced. Yet, we cannot countenance the patent inconsistency between the one part of the award that recognized a loss as a result of the incident and the other that rejected the idea of any damages at all, even those directly attributable to the surgeries, which were consequences, at least in part, of the incident, and were facts that could not be exaggerated.
Having determined that plaintiff is entitled to a new trial on damages, we need not address the other issues raised. In retrying the case, the trial court may be expected to address anew the questions raised in order to avoid error.
*937 Reversed and remanded for a new trial on damages.