990 A.2d 679 (2010)
412 N.J. Super. 319
Philip KOZMA, Plaintiff-Appellant,
v.
STARBUCKS COFFEE COMPANY, Lionetti Enterprises, LLC, Pavers Plus Landscaping, Inc., Defendants-Respondents, and
Lionetti Enterprises, LLC, Defendant/Third-Party Plaintiff,
v.
Pavers Plus Landscaping, Inc., Third-Party Defendant.
DOCKET NO. A-3908-08T3.
Superior Court of New Jersey, Appellate Division.
Submitted February 11, 2010.
Decided March 19, 2010.
*680 Drazin & Warshaw, Red Bank, attorneys for appellant (John R. Connelly, Jr., on the brief).
Law Offices of John Tierney, LLC, Parsippany, attorneys for respondent Starbucks Corporation (John Tierney, on the brief).
Weston, Stierle, McFadden & Capotorto, Parsippany, attorneys for respondent Lionetti Enterprises, join in the brief of respondent Starbucks Corporation.
Campbell, Foley, Lee, Murphy & Cernigliaro, P.C., attorneys for respondent Pavers Plus Landscaping, Inc., join in the brief of respondent Starbucks Corporation.
Before Judges STERN, J.N. HARRIS, and NEWMAN.
The opinion of the court was delivered by
J.N. HARRIS, J.S.C. (temporarily assigned).
On March 2, 2005, plaintiff slipped and fell on ice outside of a Starbucks coffee *681 shop in Matawan, allegedly suffering serious and permanent personal injuries. He proceeded to trialutilizing a conventional theory of negligenceagainst the owner of the premises, Lionetti Enterprises, LLC; a maintenance contractor, Pavers Plus Landscaping, Inc.; and Starbucks Corporation. The jury allocated sixty percent of the negligence and proximate cause to Starbucks and the balance of forty percent to plaintiff. Lionetti and Pavers Plus were exonerated of fault for the happening of the incident. Notwithstanding that the liability scale had tipped in favor of plaintiff, the jury nevertheless unanimously declined to award plaintiff any compensatory damages.
Plaintiff's appellate brief proposes that the "only issue on appeal is whether or not appellant is entitled to a new trial on damages in view of the jury's disregard of the undisputed evidence that as a result of the accident appellant suffered [an] injury to his left knee." Furthermore, plaintiff asserts that under the posture of all the evidence presented, "the jury was not authorized to return a verdict of no damages" and "the verdict amounted to an imperious abdication of the jury's responsibility."
We disagree with all of plaintiff's contentions and recognize that because juries infuse community notions of justice into their verdicts, there is no sound basis upon which to disturb the judgment of the Law Division. Satisfied that the jury was properly instructed, we should trust its judgment. See also He v. Miller, 411 N.J.Super. 15, 35, 983 A.2d 1164 (App.Div. 2009) (reinstating a jury verdict notwithstanding that it was "not unreasonable to conclude that the pain and suffering award missed the mark").

I.
On the date of the incident, plaintiff was fifty years of age. He was employed as a contractor, having started his construction career as a framing carpenter. In 1997, plaintiff reportedly suffered a work-related injury to his left knee. He underwent arthroscopic surgery to repair the left knee, which was later followed by a similar surgery to the right knee a few years later. From time to time, plaintiff's knees required either aspiration or injection with therapeutic fluids. He endured several years of knee problems associated with arthritis, and further suffered related neck and lower back problems, plus "some headaches behind my eye" for which he sought additional chiropractic and medical treatment.
On the day in question, after purchasing a Starbucks coffee, plaintiff walked "straight out the door which I guess led me down towards the handicap ramp. And proceeded to slip and fall on my back, twisted my leg, you know, kind of to the, straight out to the side." Moments later the police arrived, whereupon plaintiff declined an ambulance even though "I knew I was hurt." He explained that he did not want to endure a long wait in an emergency room, and that he would instead call his personal physician, which "would be to my benefit." Indeed, within an hour or two, plaintiff went to the office of Dr. Mulholland, complaining of difficulty in walking and pain in the left knee. Dr. Mulholland prescribed a knee brace, which plaintiff wore for "six weeks maybe."
For some time after the incident, plaintiff complained of pain and numbness in other areas of his body. Eventually, he sought the services of a pain management physician, Dr. Metzger, because, among other reasons, "I have, well, to put it bluntly, every waking hour I know I have a pair of testicles." Dr. Metzger prescribed a series of epidural injections *682 "into my lower spine which dulls the nerves going to that groin area."
On cross-examination, it was revealed that after the incident, plaintiff was able to go on a fifteen-hour automobile trip to Florida and frequently drove from New Jersey to his home in the Poconos. Plaintiff also conceded that after the fall, on at least one occasion, he played two consecutive eighteen-hole rounds of golf.
At the conclusion of the testimony and closing arguments of the attorneys, the trial judge instructed the jury on the numerous issues in dispute, including compensatory damages. Approximately forty-five minutes after commencing its deliberations, the jury presented the following question to the court:
If liability is found, to be present, does a monetary award have to be made? Can we assign zero or must there be a dollar amount?
After discussing the law and available options with all of the attorneys, the trial court decided to re-read its previous instruction on damages[1] that had been given to the jury earlier in the afternoon, with a limited preface. None of the attorneys objected to this course of action. Thirty minutes later, the jury announced that it had reached a verdict, finding that only plaintiff and Starbucks were negligent and the proximate cause of the incident, but compensating plaintiff with "[n]o monetary award."
Plaintiff's motion for a new trial or for an additur was denied. The trial court noted:
The jury was free to believe that, based on the evidence before it, Plaintiff's sprained [medial collateral ligament] healed without treatment. The jury heard evidence that following the injury Plaintiff played [thirty-six] holes of golf in two days, drove [seventy-five percent] of the trip to Orlando, Florida and walked around Disney World for seven days. The Jury properly concluded that Plaintiff's injury was temporary and had healed without treatment and without limiting the Plaintiff in his daily activities.
This appeal followed.

II.
We start with the recognition that the appellate scope of review of an order denying a new trial is necessarily constrained. "The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; see also, Dolson v. Anastasia, 55 N.J. 2, 5-7, 258 A.2d 706 (1969) (holding that the scope of appellate review is the same as that applied by the trial judge on a motion for a new trial under Rule 4:49-1). Thus, a "trial judge shall grant the motion [for a new trial] if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a).
We accord substantial deference to the trial court with respect to witness credibility, demeanor, and abstractions not documented by the record, such as the "feel of the case," but we otherwise make an independent determination of whether an injustice did in fact occur. Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979); Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98, 379 A.2d 225 (1977); Dolson, *683 supra, 55 N.J. at 6-8, 258 A.2d 706. We thoroughly "canvass the record to determine if `reasonable minds might accept the evidence as adequate to support the jury verdict.'" Klawitter v. City of Trenton, 395 N.J.Super. 302, 324, 928 A.2d 900 (App.Div.2007) (quoting Borngesser v. Jersey Shore Med. Ctr., 340 N.J.Super. 369, 377, 774 A.2d 615 (App.Div.2001)). "`[A] jury verdict, from the weight of the evidence standpoint, is impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice.'" Doe v. Arts, 360 N.J.Super. 492, 502-03, 823 A.2d 855 (App.Div.2003) (quoting Carrino, supra, 78 N.J. at 360, 396 A.2d 561).
While it is true that plaintiff presented expert testimony that could support a jury determination that a permanent injury was sustained, Pardo v. Dominguez, 382 N.J.Super. 489, 492, 889 A.2d 1099 (App.Div.2006), the jury was not required to reach that conclusion. Ames v. Gopal, 404 N.J.Super. 82, 86, 960 A.2d 765 (App. Div.2008), certif. denied, 198 N.J. 316, 966 A.2d 1080 (2009).
A jury "need not give controlling effect to any or all of the testimony provided by experts even in the absence of evidence to the contrary." State v. Spann, 236 N.J.Super. 13, 21, 563 A.2d 1145 (App. Div.1989), aff'd, 130 N.J. 484, 617 A.2d 247 (1993). "The jury may adopt so much of it as appears sound, reject all of it, or adopt all of it." Ibid.; see also Amaru v. Stratton, 209 N.J.Super. 1, 506 A.2d 1225 (App. Div.1985).
Likewise, although plaintiff recognizes that the jury's award must stand unless it is plainly wrong or shocking to the conscience of the court, Mahoney v. Podolnick, 168 N.J. 202, 229-30, 773 A.2d 1102 (2001), his argument is implicitly based on the assumption that the jury was required to accept all the evidence favorable to him. This disregards the rule that in reviewing a jury's verdict, a judge must view the evidence in the light most favorable to the party opposing the motion for relief. Caldwell v. Haynes, 136 N.J. 422, 432, 643 A.2d 564 (1994).
We agree with the trial judge that the evidence was susceptible to an interpretation that minimized the monetary equivalent of plaintiff's pain and suffering to its vanishing point. Given the long history of plaintiff's related prior injuries, the jury was free to conclude either that plaintiff's current complaints stemmed from that legacy, or that the fall at Starbucks was inconsequential in affecting plaintiff's lifestyle and quotient of pain and suffering.
Additionally, the jury's damage assessment is entitled to a presumption of correctness and should stand "unless it is so disproportionate to the injury and resulting disability shown as to shock the conscience and to convince [the trial court] that to sustain the award would be manifestly unjust." Baxter, supra, 74 N.J. at 596, 379 A.2d 225. Therefore, additur can only be ordered when a new trial on the damages issue would be warranted. Pressler, Current N.J. Court Rules, comment 3 on R. 4:49-1 (2010).
Following our methodical review of the record, we harbor no indecision in finding that the jury's verdict did not cause a miscarriage of justice under the law. On the contrary, sufficient credible evidence in the record as a whole supported all aspects of the jury's verdict. Crego v. Carp, 295 N.J.Super. 565, 577-579, 685 A.2d 950 (App.Div.1996), certif. denied, 149 N.J. 34, 692 A.2d 48 (1997).
Plaintiff's reliance upon Love v. Nat'l R.R. Passenger Corp., 366 N.J.Super. 525, 841 A.2d 931 (App.Div.), certif. denied, 180 *684 N.J. 355, 851 A.2d 649 (2004) and Chamberlain v. Sturma, 94 N.J.Super. 1, 226 A.2d 720 (App.Div.1966), aff'd o.b., 48 N.J. 556, 226 A.2d 834 (1967) is unpersuasive. At the trial in Love, the parties stipulated to liability and tried only those issues relating to medical causation and compensatory damages. The jury returned a verdict in favor of plaintiff awarding him $65,000 for lost wages and $0 for pain and suffering. This court found the verdict inconsistent and ordered a new trial. Love, supra, 366 N.J.Super. at 534, 841 A.2d 931.[2] We said:
[W]e cannot countenance the patent inconsistency between the one part of the award that recognized a loss as a result of the incident and the other that rejected the idea of any damages at all, even those directly attributable to the surgeries, which were consequences, at least in part, of the incident, and were facts that could not be exaggerated.
[Ibid.]
In the present appeal, we find no jury inconsistency whatsoever, much less one capable of engendering the necessity for a new trial.
In Chamberlain, we reversed a jury verdict of no cause for action on damages. Although the specific testimony was not reviewed, the panel in Chamberlain concluded that the jury could not have reasonably found no damages because "defendants' only medical witness acknowledged that plaintiff sustained a back injury which was causally related to the incident." Chamberlain, supra, 94 N.J.Super. at 4, 226 A.2d 720. In the case before us, there was ample evidence from defendant's expert Dr. Gordon that plaintiff's symptomatology was consistent with pre-existing conditions and that the fall neither did further damage nor permanently aggravate any pre-existing arthritic condition. In other words, the evidence presented to the jury was not as one-sided as plaintiff wants us to believe.
In Amaru, we recognized that a "jury has no duty to give controlling effect to any or all of the testimony provided by the parties' experts, even in the absence of evidence to the contrary." Amaru v. Stratton, supra, 209 N.J.Super. at 20, 506 A.2d 1225. Here, there was significant evidence calling into question the reliability of plaintiff's expert witness's evidence as well as that given by plaintiff. The jury could reasonably find that the impact of the fall was so insignificant that no additional injury beyond plaintiff's preexisting condition was sustained.
Affirmed.
NOTES
[1] It appears that the court read from Model Jury Charge (Civil) § 8.11(E), Disability, Impairment and Loss of the Enjoyment of Life, Pain and Suffering (Approved 12/96) (http:// www.judiciary.state.nj.us/civil/charges/8.11E. pdf (last accessed on Mar. 11, 2010)).
[2] The matter was tried for a second time. Love v. Nat'l R.R. Passenger Corp., A-1611-05, 2008 WL 313112, decided February 6, 2008, certif. denied, 195 N.J. 520, 950 A.2d 906 (2008). Once again, the parties stipulated to liability, the evidence was confined to medical causation and compensatory damages, and the jury found defendant's negligence, in whole or in part, caused injury to plaintiff, awarded $300,000 for past lost earning capacity and health benefits and $50,000 for the present value of future lost earning capacity and health benefits. The jury awarded $0 for past and future pain and suffering. Plaintiff filed a motion for a new trial or additur. The trial judge denied the motion for a new trial but granted an additur of $50,000 for past pain and suffering and $75,000 for future pain and suffering on the condition that defendant accept the additur. Defendant complied, and the judge entered an amended judgment of $475,000. We affirmed the amended judgment.