**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0530-15T1

ISAAC J. BUCHEN and
GAIL BUCHEN,

    Plaintiffs-Respondents,

v.

TAYLOR R. BRANICK and
JAMES S. BRANICK,

    Defendants-Appellants.

_____

Argued February 14, 2017 — Decided June 27, 2017

Before Judges Leone and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-
8119-13.

John V. Mallon argued the cause for appellants
(Chasan Leyner & Lamparello, P.C., attorneys;
Mr. Mallon, of counsel and on the briefs;
Richard W. Fogarty, on the brief).

Franklin R. Strokoff argued the cause for
respondents (The Rothenberg Law Firm, L.L.P.,
attorneys; Mr. Strokoff, on the brief).

PER CURIAM

This appeal arises from a motor vehicle accident between plaintiff Isaac J. Buchen and defendant Taylor R. Branick. The trial court granted a directed verdict on causation and later ordered the jury to return a monetary amount after it submitted a zero-damages verdict. We reverse the court's September 4, 2015 judgment and remand for the entry of judgment based on the jury's verdict of zero damages.[1]

## I.

Plaintiff testified as follows. On December 27, 2011, he was driving in "stop and go traffic" when he was rear-ended by defendant. Plaintiff was "jolted," which he said "was significant." However, his body did not strike the steering wheel or any other part of his vehicle. Plaintiff felt "startled" and "shaken up" but did not experience immediate pain in his back or elsewhere.

Both drivers pulled over. There was minor damage to plaintiff's rear bumper and the front of defendant's car.

---

[1] Plaintiff's wife Gail Buchen's loss of consortium claim was withdrawn. Plaintiff's claims were dismissed against defendant's father James S. Branick, the owner of the vehicle.

A-0530-15T1

Plaintiff did not complain of pain, declined an ambulance, and drove home from the scene.[2]

Plaintiff testified that, the next morning, he felt pain in his lower back, and "shooting pains down [his] leg to [his] toes," that he never experienced before. He did not seek medical attention until about a week and a half after the accident. A Dr. Goldenburg (or Goldenberg) had plaintiff get an MRI and prescribed physical therapy.[3] Plaintiff attended physical therapy for four to five months. The pain "initially" improved and then improvement "stalled," prompting him to stop attending physical therapy in April 2012. The physical therapy was the last active treatment plaintiff received. Dr. Goldenburg also recommended plaintiff visit a pain management doctor, Dr. Patel, who proposed injections for the pain. Plaintiff declined because the pain, while persistent, "wasn't completely intolerable." He decided to "live with the pain, since it was . . . tolerable."

Plaintiff testified he saw Dr. Jonathan Lewin in November 2014 after having not seen a doctor for treatment for roughly two-and-a-half years. Dr. Lewin had plaintiff get an MRI and an x-

---

[2] Defendant testified she hit plaintiff's car and was "jolted forward." She testified it was "[m]edium to light impact" and that she did not hit the steering wheel. She added plaintiff said he was okay.

[3] The spelling of this name varies in the record.

A-0530-15T1

ray.  He suggested surgery or injections, but plaintiff again declined.

Plaintiff testified that, prior to the accident, he had "a very active lifestyle."  He enjoyed working out, hiking, biking, skating, and spending time with his wife and eight children. Plaintiff's activities have been limited since the accident in a number of ways.  He is no longer able to shovel snow or go on long bike rides.  He has not gone to the gym since December 2011.  He is also unable to carry his children on his back around the house or when they go hiking.  He still feels pain every day.  While he does not have the shooting pains down his legs permanently, he does still experience them from time to time.  He is still able to travel by train and plane.  He is able to walk the five blocks in New York City from the Port Authority to his office.  He will consider injections or surgery if the pain worsens, but, if it stays as is, he will "try to continue to live with it."  He does not wear a back brace, take any prescription medication, or walk with a cane or a limp.[4]

Plaintiff played for the jury the videotaped deposition of Dr. Lewin, who testified as follows.  The MRI revealed plaintiff "had a combination of distal bulge or herniation" in his lumbar

---

[4]  Plaintiff's wife testified similarly as to defendant's limitations since the accident.

vertebrae and spondylolysis, which is "a crack . . . in the back at the lower level of his spine." "[T]he onset of the pain was caused by the accident," and "the bulge and the herniation and even the spondylolysis may have been caused by the accident, but, . . . typically speaking, it's an acquired condition, which is more likely exacerbated by this type of accident than actually caused by it." He expected plaintiff's symptoms to continue forever.

Defendant called two experts. First, Dr. Alan Miller, an orthopedic surgeon, testified as follows. Dr. Miller examined plaintiff on September 16, 2014. The bulge identified in the MRI could be caused by the accident but also could be degenerative, and was not compressing the nerves. The spondylolysis "was a preexisting condition and not related to the accident."

Dr. Miller testified plaintiff reported that "following the accident he developed neck and lower back pain." Dr. Miller also reviewed Dr. Goldenburg's records, which showed plaintiff complained of lower back pain. Based on those records, Dr. Miller conceded plaintiff was "injured" and "hurt" in the accident because he suffered "strains and sprains," namely "a cervical sprain [and] a lumbar sprain." However, those injuries resolved.

Second, Dr. Eric Fremed, a neurologist, testified as follows. Dr. Fremed examined plaintiff on October 22, 2014 and found

plaintiff was "left without objective evidence of any permanent neurological injury" caused by the accident. The herniation or bulge was degenerative and not caused by the accident. Rather, Dr. Fremed found, "by the history [plaintiff] gave me, he suffered a Lumbosacral sprain as a result of the accident," which later improved. Both defense experts agreed plaintiff suffered no permanent injury and required no future treatment.

At the close of the evidence, plaintiff moved for a directed verdict on negligence and causation. Defendant did not dispute she was negligent, but she contested causation and damages. The trial court granted the plaintiff's motion. As to causation, the court found the jurors must find at least a temporary injury, which it found "equates . . . to causation."[5]

The trial court instructed the jury:

> The plaintiff contends that he sustained a permanent injury as a result of the accident of December 27th, 2011. The defendant contends that the plaintiff sustained no permanent injury as a result of the motor vehicle accident and, at most, sustained a temporary injury which should have healed within a few months.
>  . . . .
> Now, in this case, the Court has ruled that the plaintiff is free from fault in the happening of this accident; that the defendant was negligent in the happening of the

---

[5] Because this case was not subject to the "[l]imitation on lawsuit option," plaintiff was not restricted to recovering for "a permanent injury." See N.J.S.A. 39:6A-8(a).

accident; and that her negligence caused the accident and any injuries sustained. So, the issue for you to decide is whether the plaintiff sustained a temporary or permanent injury and what amount would constitute fair and adequate compensation for the injuries sustained?

The plaintiff is entitled to recover fair and reasonable money damages for the full extent of the harm caused. . . .

. . . .

Now, because I have already ruled as a matter of law as to certain issues in the case the issue you'll have to decide . . . reduces itself to one question . . . . What amount of money will fairly and justly compensate the plaintiff . . . for pain and suffering, disability, and loss of enjoyment of life?

On July 17, 2015, the jury returned a verdict of "zero dollars." Without any request by plaintiff, the trial court told counsel "[t]he jury must have been confused" as a zero-damages verdict "was not an option. The jury must return a verdict of a monetary amount in favor of the plaintiff, at least, for temporary injuries." Over defendant's objection, the court decided it was "going to have to recharge them."

The trial court brought the jury back and instructed:

The Court feels it must have been unclear in it's [sic] instructions to you. The only options — there was an option during your deliberations to consider whether the injury sustained by the plaintiff was temporary or permanent. But the undisputed evidence was that he was injured. No medical testimony existed that the plaintiff was not injured.

Under the law, therefore, the Court has determined that the jury must returned [sic]

a damage award whether for temporary injury or permanent. That's within your purview. Was it temporary; was it permanent? But, even if temporary, the plaintiff is entitled to a monetary award. Which you determine in your good sense and judgment the fair and reasonable value of that award. Therefore, I'm going to recharge you on the law with respect to damages and what an award must encompass. And then I'm going to ask you to re-deliberate.

Shortly thereafter, the jury returned a $30,000 verdict. The court denied defendant's motion for a new trial or reinstatement of the zero-damages verdict.

## II.

Defendant argues the trial court erred in entering a directed verdict on causation under Rule 4:40-1. "'[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied.'" Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (citation omitted); accord Dolson v. Anastasia, 55 N.J. 2, 5 (1969). "In reviewing . . . a motion for judgment under Rule 4:40-1, [appellate courts] apply the same standard that governs the trial courts." Smith, supra, 225 N.J. at 397. We must hew to that standard of review.

"To recover damages for the negligence of another, a plaintiff must prove that the negligence was a proximate cause of the injury sustained." Scafidi v. Seiler, 119 N.J. 93, 101 (1990). "Proximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." Ibid. Thus, "proximate cause is generally an issue for the jury." Miller v. Estate of Sperling, 166 N.J. 370, 386 (2001); accord Winstock v. Galasso, 430 N.J. Super. 391, 418 (App. Div.), certif. denied, 215 N.J. 487 (2013).

Of course, whether "negligence was a proximate cause of the injury sustained," Scafidi, supra, 119 N.J. at 101, depends on the injury. Where a plaintiff claims multiple injuries, they each raise a separate causation issue, and it is improper to lump them together. See Ponzo v. Pelle, 166 N.J. 481, 491-92 (2001) (ruling that, where the plaintiff alleged "three distinct injuries from the accident," two of which were "hotly disputed," a "single jury interrogatory was inadequate").

Here, plaintiff principally claimed permanent injuries, but defendant's experts hotly disputed that they were caused by the accident. Plaintiff's expert, Dr. Lewin, opined that the disc herniation or bulge and spondylolysis "may have been caused by the accident." However, he conceded they may have been preexisting conditions which were "more likely exacerbated by this type of

accident than actually caused by it." On cross-examination, he admitted the spondylolysis was a preexisting condition. Dr. Miller denied plaintiff had a herniated disc, believed the bulge could be caused by degeneration and was not compressing the nerves, and asserted the spondylolysis "was a preexisting condition and not related to the accident." Dr. Fremed opined that the herniation or bulge was degenerative and not caused by the accident. Because the experts presented evidence disputing the accident caused the alleged herniation or bulge and the spondylolysis, it was improper to grant a directed verdict on causation regarding those claimed injuries.

In granting the directed verdict on causation on all injuries, the trial court improperly lumped plaintiff's claimed permanent injuries in with lesser, temporary complaints. The court repeatedly stressed that "all three experts including both defense experts testified that [plaintiff] sustained an injury to his lower back, for at least 3-4 months, that was caused by the motor vehicle collision." That was not a reason to grant a directed verdict on the disputed causation of the more serious, permanent injuries which were the focus of plaintiff's claims.

The experts' testimony showed some agreement that plaintiff may have suffered some temporary injury after the accident. Plaintiff's expert testified plaintiff "had complaints of back

pain and leg pain after" the accident. Dr. Miller testified plaintiff was "injured" and "hurt" in the accident because he suffered "strains and sprains," namely "a cervical sprain [and] a lumbar sprain" which soon resolved. Dr. Fremed testified plaintiff "suffered a [soft-tissue] Lumbosacral sprain as a result of the accident" which soon improved.

However, that testimony was based neither on the experts' examination of plaintiff, nor on medical testing, but solely on plaintiff's own statements. None of the experts examined defendant until 2014, long after the 2011 accident and years after the temporary sprains and strains allegedly resolved. Plaintiff's expert based his comments about plaintiff's back and leg pain in 2011 on the history he took from plaintiff.[6] Dr. Miller's finding of neck and lower back sprains came after his review of defendant's statements to him and to Dr. Goldenburg that "following the accident he developed neck and lower back pain." Dr. Fremed expressly based his finding of a lower back sprain on "the history [plaintiff] gave" him. Plaintiff gave similar testimony at trial.

---

[6] Indeed, plaintiff's expert based his opinion that the accident caused all of plaintiff's symptoms on his statements that he "didn't have complaint[s] prior to his accident" and "he began having symptomology" after the accident. Dr. Lewin admitted that his "opinion on causation, that [plaintiff] was asymptomatic for many of these conditions before the accident, is based entirely on him telling [Lewin] that he had no pain before the accident."

11

The jury was not required to believe plaintiff's statements. "Jurors are free to believe some, all or none of a witness' testimony[.]"  State v. Gaines, 377 N.J. Super. 612, 622 (App. Div.), certif. denied, 185 N.J. 264 (2005); accord Model Jury Charge (Civil) § 1.12L, "General Provisions for Standard Charge" (1998).  The jury's verdict suggested it did not credit plaintiff's testimony about his alleged injuries.

Similarly, the jury was not required to believe expert opinions based solely on plaintiff's statements.  "'The weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated.'" Johnson v. Salem Corp., 97 N.J. 78, 91 (1984) (citation omitted). "'To determine the credibility, weight and probative value of an expert's opinion, one must [be able to] question the facts and reasoning on which it is based.'"  State v. Wakefield, 190 N.J. 397, 452 (2007) (citation omitted), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008).  Thus, jurors are instructed:

> The weight of the expert's opinion depends on the facts on which the expert bases his/her opinion.  You as jurors must also decide whether the facts relied upon by the expert actually exist.
>      . . . [Y]ou are not bound by the testimony of an expert.  You may give it whatever weight you deem is appropriate.  You

> may accept or reject all or part of an expert's opinion(s).
>
> [Model Jury Charge (Civil) § 1.13, "Expert Testimony" (1995) (footnotes omitted).]

"A jury 'need not give controlling effect to any or all of the testimony provided by experts even in the absence of evidence to the contrary.' 'The jury may adopt so much of it as appears sound, reject all of it, or adopt all of it.'" Kozma v. Starbucks Coffee Co., 412 N.J. Super. 319, 325 (App. Div. 2010) (quoting State v. Spann, 236 N.J. Super. 13, 21 (App. Div. 1989), aff'd, 130 N.J. 484 (1993)). "Credibility is a jury question when people 'of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed[.]'" Johnson, supra, 97 N.J. at 92 (citation omitted). "[S]imply because proofs are undisputed is insufficient in and of itself to warrant the grant of a motion for judgment . . . in situations in which credibility is at issue, since the fact-finder is free to reject those uncontested proofs on credibility grounds." Alves v. Rosenberg, 400 N.J. Super. 553, 566 (App. Div. 2008) (quoting Johnson, supra, 97 N.J. at 92).[7]

---

[7] A jury is not even required to accept a stipulated fact. "A stipulation of fact is nothing more than evidence that is uncontroverted. However, a jury is free to reject any evidence, including that which is uncontroverted." State v. Wesner, 372 N.J. Super. 489, 494 (App. Div. 2004), certif. denied, 183 N.J.

"Ordinarily, such a motion should be denied when the case rests upon issues of credibility." Ibid. Thus, in Alves, we held a directed verdict for the plaintiff would have been improper where "several of the facts upon which the expert based his conclusion came directly from plaintiff's testimony," whose credibility was disputed. Ibid. The "jury could question [the expert]'s conclusions, especially when affording defendant all reasonable inferences to which he is entitled at that stage." Ibid.

Thus, the trial court erred in removing the issue of proximate cause from the jury by a directed verdict. This was not one of "the highly extraordinary case[s] in which reasonable minds could not differ on whether that issue has been established." Fluehr v. City of Cape May, 159 N.J. 532, 543 (1999).

III.

Despite the mistaken directed verdict on causation, the jury's verdict was for zero damages. The trial court committed further error in sending the jury back to redeliberate and requiring that it award a monetary amount.

_____

214 (2005); see also AGS Computs., Inc. v. Bear, Stearns & Co., 244 N.J. Super. 1, 5 (App. Div. 1990); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 4(a) on N.J.R.E. 101(a)(4) (2016).

14

"[I]n our constitutional system of civil justice, the jury — not a judge — is charged with the responsibility of deciding the merits of a civil claim and the quantum of damages to be awarded a plaintiff." Cuevas v. Wentworth Grp., 226 N.J. 480, 499 (2016). "A jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.' The presumption of correctness that attaches to a damages award is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is 'a miscarriage of justice.'" Id. at 501 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 598 (1977)); see City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 492 (2010) (applying this standard where the damages were alleged to be inadequate). "[T]he evaluation of damages is a matter uniquely reposed in the jury's good judgment, and to justify judicial interference, '[a] verdict must be "wide of the mark" and pervaded by a sense of "wrongness."'" Jastram v. Kruse, 197 N.J. 216, 229 (2008) (citation omitted).

"A 'judge may not substitute his judgment for that of the jury merely because he would have reached the opposite conclusion; he is not a . . . decisive juror.'" Cuevas, supra, 226 N.J. at 501 (quoting Baxter, supra, 74 N.J. at 598). "[A]n appellate court must pay some deference to a trial judge's 'feel of the case,'" but "a trial judge cannot overthrow the jury's credibility

determinations and findings of fact and then substitute her own." Id. at 501-02 (citation omitted).

Rather, "court[s] must give 'due regard to the opportunity of the jury to pass upon the credibility of the witnesses.'" Id. at 501 (quoting He v. Miller, 207 N.J. 230, 248 (2011)). "The jury's views of the facts and the credibility of the witnesses as expressed in its verdict are entitled to deference from both the trial and appellate courts." He, supra, 207 N.J. at 251-52. Here, the trial court mistakenly did not defer to the jury's view of the facts and its credibility determination.

The trial court expressed concern that its instructions had confused the jury, but there was no evidence of jury confusion. Nor were the instructions confusing. The court gave the model civil jury instructions, including the general instructions allowing the jury to disbelieve the witnesses' testimony, consider the truth of the facts relied on by experts, and to reject an expert's opinion. The court also gave the model damage instructions, including that the amount of damages was left to the jury's "sound discretion." E.g., Model Jury Charge (Civil) § 8.11E "Damages-General: Disability, Impairment and Loss of the Enjoyment

of Life, Pain and Suffering" (1996). Indeed, after voiding the jury's verdict, the court repeated those damage instructions.[8]

The trial court based its rejection of the jury's zero-damages verdict on its mistaken directed verdict on causation. The court recognized the jury was not required to award damages for plaintiff's claimed permanent injuries, namely his alleged herniation, bulge, or spondylolysis. However, the court stated the jury was required to award damages at least for the temporary injuries. However, as set forth above, the jury could disbelieve plaintiff's testimony claiming temporary injuries, plaintiff's prior statements claiming temporary injuries, and the experts' opinions based on plaintiff's statements.

Even though the trial court instructed the jury that causation had been established, the jury was not required to award damages for temporary pain, sprains, or strains. See, e.g., Kozma, supra, 412 N.J. Super. at 327. In Kozma, we upheld a jury's zero-damages verdict even though it found negligence and causation. Id. at 325. We ruled "the jury was free to conclude either that plaintiff's current complaints stemmed from [his prior injuries],

_____

[8] We reject plaintiff's argument that the jury's second verdict of $30,000 is indicative of the jury's confusion and belief that plaintiff should be compensated. Rather, it appears the jury ultimately rendered a $30,000 verdict to satisfy the trial court's demand and avoid further rebuke.

17

or that the [accident] was inconsequential in affecting plaintiff's lifestyle and quotient of pain and suffering." Ibid. "The jury could reasonably find that the impact of the [accident] was so insignificant that no additional injury beyond plaintiff's preexisting condition was sustained." Id. at 327.

The jury's zero-damages verdict was reasonably based in the evidence. There was no significant damage to the cars. Plaintiff himself testified the jolt from the accident did not result in his body striking any part of his vehicle. He admittedly had no immediate pain, went home while declining assistance, and did not seek medical attention for a week and a half.[9] Other than attending physical therapy, he lost no time from work, and sought no further treatment for almost three years. Plaintiff did not get injections or surgery, was still able to travel and walk to work, and was not on any prescription medication.

As in Kozma, "the evidence was susceptible to an interpretation that minimized the monetary equivalent of

---

[9] In Amaru v. Stratton, 209 N.J. Super. 1 (App. Div. 1985), we sustained a zero-damages award, finding a "jury's verdict that [an] auto accident did not aggravate plaintiff's injuries had ample support in the record." Id. at 19-20. Despite the "jolt to [plaintiff's] back," "the damage sustained by plaintiff's car was minimal and the accident minor," he was able to exit the car and function, and "the allegation that his back injury was aggravated by the collision was contradicted by his decision not to consult a doctor until four or five days after the accident." Ibid.

plaintiff's pain and suffering to its vanishing point." Id. at 325. "While it is true that [there was] expert testimony that could support a jury determination that a [temporary] injury was sustained, the jury was not required to reach that conclusion." Ibid. (citation omitted). Thus, "the jury's damage assessment is entitled to a presumption of correctness and should stand" because it was not "'so disproportionate to the injury and resulting disability shown as to shock the conscience and to convince [the court] that to sustain the award would be manifestly unjust.'" Id. at 325-26 (quoting Baxter, supra, 74 N.J. at 596).

Plaintiff cites Love v. National Railroad Passenger Corp., 366 N.J. Super. 525 (App. Div.), certif. denied, 180 N.J. 355 (2004). There, the jury "expressly" found medical causation, "and it determined that plaintiff was entitled to a [$65,000] damage award for lost wages, i.e., that he had been disabled as a result of the incident as to be unable to work, at least for a period of time or to a limited extent," but awarded $0 for pain and suffering. Id. at 532. However, we emphasized the plaintiff had "a series of surgeries" culminating in the replacement of both knees. Ibid. We found "there can be no question that plaintiff experienced some transitory pain and suffering, at the very least, as a consequence of each of the surgeries required," but "the jury made no award whatsoever that would fairly compensate plaintiff

for those logically inescapable periods of pain and suffering."

Ibid.  We could not

> countenance the patent inconsistency between the one part of the award that recognized a loss as a result of the incident and the other that rejected the idea of any damages at all, even those directly attributable to the surgeries, which were consequences, at least in part, of the incident, and were facts that could not be exaggerated.
>
> [Id. at 534.]

Here, as in Kozma, supra, "[p]laintiff's reliance upon Love . . . is unpersuasive."  412 N.J. Super. at 326.  First, the jury did not issue an internally-inconsistent verdict; it simply awarded zero damages.[10]  Thus, there was "no jury inconsistency whatsoever, much less one capable of engendering the necessity for a new trial."  Id. at 327.  Second, plaintiff underwent no surgeries resulting in "logically inescapable periods of pain and suffering."  Cf. Love, supra, 366 N.J. Super. at 532.

Similarly, in Chamberlain v. Sturma, 94 N.J. Super. 1 (App. Div. 1966), aff'd o.b., 48 N.J. 556 (1967), we ruled a jury could not "disregard the evidence showing subsequent and substantial medical treatment for [the] cervical injury" suffered in the

---

[10] Because the jury's verdict was not internally inconsistent, plaintiff is mistaken in relying on Mahoney v. Podolnick, 168 N.J. 202, 222-23 (2001), which permits a court to remedy an internally-inconsistent verdict by sending the jury back for further deliberations.

accident, including being hospitalized for over a month. <u>Id.</u> at 4. Given "[t]he reality of such a condition" that required doctors to keep Chamberlain in the hospital for over a month, we found "the jury's determination that plaintiff was 'not entitled to damages' was so contrary to the weight of the evidence as to be the result of mistake, partiality, prejudice or passion." <u>Ibid.</u> Here, by contrast, plaintiff was not hospitalized, and received no medical treatment other than physical therapy based on his subjective complaints.[11]

Accordingly, the trial court committed error in voiding the jury's zero-damages verdict.

IV.

Ordinarily, when a "directed verdict was improvidently granted, [an appellate court will] reverse and remand the matter for a new trial." <u>E.g.</u>, <u>Potente v. County of Hudson</u>, 187 <u>N.J.</u> 103, 106 (2006) (granting the defendant a new trial where the trial court mistakenly granted a directed verdict on liability and

---

[11] In <u>Chamberlain</u>, <u>supra</u>, we also "noted that defendants' only medical witness acknowledged that plaintiff sustained a back injury which was causally related to the incident." 94 <u>N.J. Super.</u> at 4. While that supported our determination that the jury improperly disregarded the objective evidence of Chamberlain's hospitalization, here defendant's experts based their comments about plaintiff's temporary strains and sprains solely on his subjective complaints. Thus, the evidence "was not as one-sided as" in <u>Chamberlain</u>. <u>See</u> <u>Kozma</u>, <u>supra</u>, 412 <u>N.J. Super.</u> at 327.

the jury awarded damages to the plaintiff).  Here, although the trial court improperly granted a directed verdict on causation, we need not grant defendant a new trial, because the jury issued a valid verdict in defendant's favor.

Even though the jury was instructed that defendant's negligence caused any injuries plaintiff sustained, the jury considered the damages issue and found that defendant did not sustain any injuries warranting compensation.  Thus, ordering a new trial on causation would be unnecessary and a burden on the courts.  See Johnson v. Salem Corp., 189 N.J. Super. 50, 54 (App. Div. 1983), aff'd as modified, 97 N.J. 78 (1984).  "We are not blind to litigation costs, and will not order a new trial when [reinstating the jury's verdict] might suffice."  Fried v. Aftec, Inc., 246 N.J. Super. 245, 252 n.4 (App. Div. 1991).  It is sufficient that we "remand for reinstatement of the jury verdict," the traditional remedy when a trial court has erroneously voided a jury's valid verdict.  E.g., Verdicchio v. Ricca, 179 N.J. 1, 33 (2004).

Reversed and remanded to reinstate the jury's zero-damages verdict.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22                                          A-0530-15T1