**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3185-21

QUEEN L. BATES, Guardian
Ad Litem for TEKHI
BARNETT, and QUEEN L.
BATES, individually,

     Plaintiffs-Appellants,

v.

LORI A. ROBSON,

     Defendant-Respondent,

and

GERALD W. ROBSON,

     Defendant.

_____

Submitted December 11, 2023 – Decided April 10, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7347-19.

McHugh & Imbornone, PA, attorneys for appellants (Salvatore Imbornone, Jr., on the brief).

Flanagan, Barone & O'Brien, LLC, attorneys for respondent (Michelle Mary O'Brien, of counsel and on the brief).

PER CURIAM

Tekhi Barnett (Tim) was struck by an SUV driven by defendant Lori Robson (Robson) on May 10, 2019. His mother, Queen Bates (Bates), filed a Complaint on his behalf, as his guardian ad litem, asserting negligence and individually, asserting medical expenses and loss of services. Following trial, a jury found that Tim and defendant were equally responsible for the accident, Tim suffered permanent injuries, for which the jury awarded $10,000 for future medical expenses, but that Tim suffered no permanent scarring or disfigurement. The trial court subsequently denied plaintiffs' motion for a new trial on damages. Plaintiffs now appeal from the order denying their motion for a new trial. We affirm.

## I.

When he was nine years old, Tim left his friend's house riding a non-motorized scooter. When he rode into the street, he was struck by an SUV driven by Robson. Tim was taken to the hospital and treated for cuts and lacerations to his lip, mouth, right knee, and right arm. A jury trial was conducted in April 2022, during which Bates, Tim, and Robson all testified. Plaintiffs also called

two expert witnesses concerning Tim's injuries and alleged scarring. Defendant called an expert in dentistry.

Tim testified that on the evening following the accident he felt "like, a little bit in pain and numb." In contrast, Bates testified he missed an entire season of track meets due to his injury. This assertion was belied by the record, which reflected Tim missed only a single-track meet the day after the accident.

Both dental experts acknowledged Tim lost a tooth and another tooth was chipped. Both experts also acknowledged those injuries would require future medical treatment, including braces. Plaintiffs' dental medical expert opined the cost would be approximately $84,000, while defendant's dental expert testified the cost of plaintiffs' expert's proposed future dental work, which he opined was unnecessary, would be in the range of $26,000. Defendant's expert testified Tim had no disfigurement of the lower lip, the lip color was normal, and there was no scar visible. He admitted Tim sustained an injury, but determined it healed with no disfigurement, scarification, or loss of sensory or motor function.

Although plaintiffs' dental expert opined dental reconstructive surgery would cost $84,600, he conceded that figure was on the high end of the spectrum. He also admitted the calculation included temporary treatment he would have expected Tim to have undergone shortly after the accident and until

3

he became old enough to obtain braces, but that treatment had not yet occurred at the time of trial. The jury was able to look at photographs after the accident and examine Tim's teeth and lips at trial.

The jury found: (1) Tim and Robson were both negligent in causing the accident and they apportioned liability fifty percent as to each; (2) Tim sustained a permanent injury; but (3) Tim did not sustain permanent disfigurement or scarring. It awarded zero damages for pain and suffering and awarded $10,000 in damages for future medical expenses.

Plaintiffs filed a motion for a new trial on damages. The trial court denied that motion, finding the verdict was supported by the evidence at trial. Accordingly, the court entered an order memorializing that decision on June 16, 2022. That same day, the trial court entered an order molding the verdict to reflect that no damages were being awarded because the amount awarded by the jury for future medical expenses did not exceed Tim's personal injury protection medical expense insurance coverage.

On appeal, plaintiffs argue the trial court erred in denying their motion for a new trial. Specifically, they contend (1) the jury award of zero damages for pain and suffering is shocking, inconsistent, and against the weight of the evidence; (2) the jury's award of $10,000 for future medical expenses is against

the weight of the medical evidence presented at trial; and (3) the jury's finding that Tim did not suffer a significant disfigurement or scarring is inconsistent with and against the weight of the evidence. We disagree as these arguments are belied by the testimony and evidence at trial.

## II.

Jury verdicts should be set aside in favor of a new trial sparingly and only in cases of clear injustice. Dutton v. Rando, 458 N.J. Super. 213, 223-24 (App. Div. 2019); Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 502 (App. Div. 2017); Caicedo v. Caicedo, 439 N.J. Super. 615, 628-29 (App. Div. 2015); Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005), certif. den. 186 N.J. 242 (2006). A trial court should grant a motion for a new trial only if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a); Kozma v. Starbucks Coffee Co., 412 N.J. Super. 319, 324 (2010). Indeed, the court may not substitute its judgment for that of the jury. Schaefer v. Cedar Fair, L.P., 348 N.J. Super. 223, 240 (App. Div. 2002). Instead, the court should canvass the record to determine if "reasonable minds might accept the evidence

A-3185-21

as adequate to support the jury verdict." Borngesser ex rel. Est. of Borngesser v. Jersey Shore Med. Ctr., 340 N.J. Super. 369, 377 (App. Div. 2001).

The general standard for determining whether the quantum of damages awarded by the jury is appropriate remains, as expressed by Baxter v. Fairmount Food Co., 74 N.J. 588, 596 (1977), whether the quantum is plainly wrong or shocking to the conscience of the court. See Cuevas v. Wentworth Grp., 226 N.J. 480, 499-500, 510 (2016). A determination as to the inadequacy or excessiveness of an award should be made by viewing the totality of the evidence in the light most favorable to the party opposing the motion for a new trial. Jastram ex rel. Jastram v. Kruse, 197 N.J. 216, 229 (2008); Caldwell v. Haynes, 136 N.J. 422, 432 (1994); Monheit v. Rottenberg, 295 N.J. Super. 320, 327 (App. Div. 1996); Kozma, 412 N.J. Super. at 325.

We apply substantially the same standard in our review of a trial court's decision denying a motion for a new trial following a jury verdict, giving due deference to the trial court's feel of the case, including credibility determinations. Caldwell, 136 N.J. at 431-432.

After reviewing the record in the light of the arguments advanced by the parties and applying the law, we conclude there is sufficient support in the trial record for the jury's verdict. Specifically, Bates' testimony contradicted Tim's

testimony, expanding the extent of her son's injuries and pain, and allowing the jury to find their testimony contradictory and therefore, not credible. Although Bates did not witness the accident, she gave a statement to the police at the hospital. At trial, Bates testified as to the cuts on Tim's lip, mouth, scars to his right knee and right arm, loss of a tooth and one chipped tooth, but did not present any expert testimony regarding orthopedic injuries to the knee or arm. Bates testified Tim was hesitant to smile as a result of the accident, but his schoolteacher contradicted that testimony. Additionally, neither party disputed there is nothing Tim can no longer do as a result of his injuries.

Defendant's dental expert opined there was no permanent injury, the plaintiffs' expert's treatment plan of replacing the teeth with crowns was an unnecessary treatment, and the cost of that treatment – even if implemented – was far "above the usual and customary" and was unreasonable. When adjusting plaintiffs' expert's unnecessary treatment plan for usual and customary costs, defendant's expert opined the future "extraordinary" dental work would cost $26,900. This proposed treatment plan also included sums for temporary treatment until Tim was old enough to wear braces, but that treatment had not been implemented as of the date of trial, three years after the accident, despite Bates' testimony Tim had dental insurance coverage for the treatment.

In sum, the testimony adduced at trial provided ample support for the jury's findings that although Tim suffered a permanent injury to two teeth, he suffered no permanent disfigurement as a result, and the amount of $10,000 was adequate to compensate him for future medical expenses. Indeed, the jury was free to accept the opinion of defendant's expert and to reject the opinions of plaintiffs' experts. Moreover, the contradictory testimony presented by Tim and Bates, and the jury's ability to see Tim's face and mouth and listen to his minimal complaints, also supports the jury's decision to not award for pain and suffering. The jury's verdict and award do not shock the conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3185-21